**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **COMMUNITY INSURANCE COMPANY D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD,** | |
| **Plaintiff,** | |
| **v.** | |
| | **Civil Action No. 1:25-cv-00388-MWM** |
| **HALOMD, LLC, ALLA LAROQUE, SCOTT LAROQUE, MPOWERHEALTH PRACTICE MANAGEMENT, LLC, EVOKES, LLC, MIDWEST NEUROLOGY, LLC, ONE CARE MONITORING, LLC, and VALUE MONITORING LLC,** | **District Judge:  Matthew W. McFarland** |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS MPOWERHEALTH PRACTICE
MANAGEMENT, LLC, EVOKES, LLC, MIDWEST NEUROLOGY, LLC, ONE CARE
MONITORING, LLC, AND VALUE MONITORING LLC'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................ v

**INTRODUCTION** ................................................................................................ 1

**BACKGROUND** ................................................................................................. 2

      A.     **Congress Enacts The No Surprises Act To End Surprise Billing And Efficiently Resolve Payment Disputes Between Medical Providers And Insurers** ............................................................. 2

      B.     **HaloMD And The Providers Bring IDR Arbitrations, And IDREs Often Select Their Offers Over Anthem's** .............................. 6

**LEGAL STANDARD** ........................................................................................ 10

**ARGUMENT** ..................................................................................................... 11

      A.     **This Court Lacks Subject-Matter Jurisdiction Over Most Of Anthem's Claims (Counts I–VII, IX–X)** ............................................ 12

The No Surprises Act renders Independent Dispute Resolution Entity (IDRE) determinations binding and not subject to judicial review except in cases where a court can vacate the award under the Federal Arbitration Act. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a)(1)–(4). Under settled Sixth Circuit law, vacatur is the exclusive remedy for challenging wrongdoing that compromised an arbitration award. *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906 (6th Cir. 2000); *Corey v. New York Stock Exchange*, 691 F.2d 1205 (6th Cir. 1982). So this Court lacks subject-matter jurisdiction to collaterally review IDRE determinations for monetary or prospective injunctive relief. *Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613 (5th Cir. 2025); *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271 (5th Cir. 2025).

      B.     **The Federal Common Law Of Issue Preclusion Estops Anthem From Re-Litigating The IDREs' Dispute Eligibility Determinations (Counts I–VII, IX–X)** ................................. 16

Issue preclusion applies to IDRE determinations. *See B & B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138 (2015); *Taylor v. Sturgell*, 553 U.S. 880 (2008). In every dispute at issue, Anthem had an opportunity to litigate eligibility, yet the IDREs determined that the dispute was eligible. Anthem cannot now re-litigate those same eligibility determinations in federal court. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 F. App'x 484 (6th Cir. 2017).

      C.     **Anthem Has Not Alleged Fraud With The Required Particularity Under Rule 9(b) (Counts I–X)** ....................................... 17

Anthem's claims all sound in fraud, so it must plead with particularity under Rule 9(b). *Kolominsky v. Root, Inc.*, 100 F.4th 675 (6th Cir. 2024). Anthem has not done so.

1. Anthem has not particularly alleged the Providers' role. ...... 18

In pleading fraud, Anthem cannot lump the defendants together. Rather, Anthem must particularly allege each element of each claim against each defendant, showing their individual role in the alleged fraud scheme. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003); *United States v. Doyle*, No. 1:18-cv-373, 2022 WL 1186182 (S.D. Ohio Apr. 21, 2022). Here, Anthem has not particularly alleged how the Providers actually participated in the fraudulent scheme beyond caring for Anthem's insureds as required by federal law. Although Anthem has alleged that HaloMD made the alleged fraudulent eligibility representations, Anthem nowhere alleges that the Providers instructed HaloMD to do so.

2. Anthem has not particularly alleged proximate causation. ...................................................................... 21

In pleading fraud, Anthem must particularly allege that the Providers proximately caused Anthem injury. But Anthem has not done so because both IDREs and Anthem itself broke the causal chain. To start, IDREs more directly "caused" any supposed injury when they selected HaloMD's higher offers. And Anthem more directly "caused" its own supposed injury because it allegedly could have prevented the injury had it properly objected to dispute eligibility. *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475 (6th Cir. 2022).

3. Anthem has not particularly alleged injury. .......................... 23

In pleading fraud, Anthem must particularly allege an injury caused by the Providers' illegal conduct. Fed. R. Civ. P. 9(b). But Anthem does not actually allege that it paid the awards that it lost. Rather, Anthem coyly alleges that it was "required" or "ordered" to pay awards without stating that those awards were in fact paid. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). And Anthem cannot base its supposed injury on fees—which Anthem does allege it actually paid—because HaloMD's supposed misrepresentations themselves did not cause Anthem to owe fees.

D. The Noerr-Pennington Doctrine Also Bars Anthem's Claims (Counts I–VII, IX–X) ............................................................... 24

The Noerr-Pennington doctrine shields parties from liability for protected petitioning activity, including filings made to adjudicatory bodies. *BE & K Const. Co. v. NLRB*, 536 U.S. 516 (2002); *VIBO Corp. v. Conway*, 669 F.3d 675 (6th Cir. 2012). HaloMD's IDR submissions are protected under the doctrine, so Anthem cannot rely on those same statements as a basis for liability. And no "sham" exception to that doctrine applies because Anthem admits that HaloMD and the Providers routinely *prevailed* in the proceedings. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993); *EQMD, Inc. v. Farm Bureau Gen. Ins. Co.*, No. 19-13698, 2021 WL 843145 (E.D. Mich. Mar. 5, 2021).

E. Anthem Has Not Plausibly Alleged Civil RICO Claims Against The Providers (Counts I and II) ........................................................ 27

Absent a showing of corruption, plaintiffs cannot predicate civil RICO claims on litigation proceedings. *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018); *Pompy v. Moore*, No. 19-10334, 2024 WL 845859 (E.D. Mich. Feb. 28, 2024). IDR proceedings are the functional equivalent of litigation,

so Anthem cannot allege a civil RICO claim predicated on statements HaloMD made in the IDR proceedings. In addition, Anthem has not properly alleged that the Providers directed the enterprise. *United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008). Anthem also has not even attempted to plead the elements of civil RICO conspiracy.

F. **Anthem Has Not Plausibly Alleged A Claim To Vacate The IDR Awards En Masse (Count VIII)**.............................................. 30

laintiffs seeking to vacate arbitration awards face an uphill climb. The No Surprises Act's exclusive remedy of vacatur expressly incorporates the Federal Arbitration Act's high standards. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a)(1)–(4); *Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613 (5th Cir. 2025). When fraud or undue means is alleged, a plaintiff must demonstrate that the fraud could not have been discovered during the arbitration proceeding through due diligence. *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497 (6th Cir. 2003). But Anthem affirmatively alleges that it knew that disputes were ineligible during the IDR proceedings. Nor can Anthem show that IDREs exceeded their authority because Congress unquestionably gave IDREs authority to make eligibility and payment determinations. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640 (6th Cir. 2005).

G. **Anthem Cannot Bring An ERISA Claim To Challenge IDR Proceedings (Counts IX and X)**.......................................... 31

The No Surprises Act limits judicial review of IDRE determinations, and Anthem cannot use ERISA's general cause of action to evade that specific limitation. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).

H. **The Court Should Dismiss Anthem's State Claims (Counts III– VII and X)**................................................................ 32

Anthem's state law claims suffer many of the defects described above. In addition, Anthem's Ohio Corrupt Activity Act (OCAA) claim fails to allege, as it must, a predicate act that is not a form of wire fraud. Ohio Rev. Code § 2923.34(A); *Rahimi v. St. Elizabeth Med. Ctr.*, No. C3-96-126, 1997 WL 33426269 (S.D. Ohio July 16, 1997). And Anthem's Ohio Deceptive Trade Practices Act (ODTPA) claims fails to allege, as they must, that the Providers confused a customer. *Mulch Mfg. v. Advanced Polymer Sols.*, 947 F. Supp. 2d 841 (S.D. Ohio 2013).

I. **This Court Lacks Personal Jurisdiction Over MPowerHealth (Counts I–X)**................................................................ 32

Anthem has not alleged facts sufficient to show that this Court has personal jurisdiction over MPowerHealth Practice Management, LLC. This Court lacks general jurisdiction over out-of-state MPowerHealth, and Anthem has not adequately alleged that this Court has specific jurisdiction either. None of the allegations connect MPowerHealth's alleged actions to this forum. Nor does MPowerHealth's control over Ohio subsidiaries suffice. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357 (6th Cir. 2008); *Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d 803 (S.D. Ohio 2023).

**J.** **Ohio's Anti-Slapp Statute Entitles The Providers To Their Reasonable Attorneys' Fees** ................................................................. **35**

Ohio's Anti-Slapp statute allows the Providers to recover their attorneys' fees and costs because Anthem has failed to state a claim upon which relief can be granted. Ohio Rev. Code § 2747.01(A)–(C).

**CONCLUSION** ....................................................................................................... **35**

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
   486 U.S. 492 (1988)....................................................................................25

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   2016 WL 10651033 (C.D. Cal. May 16, 2016) ......................................15

*Arnold v. CooperSurgical, Inc.*,
   681 F. Supp. 3d 803 (S.D. Ohio 2023) ...................................................34

*Ashley Furniture Indus. v. Am. Signature, Inc.*,
   2015 WL 12999664 (S.D. Ohio Mar. 12, 2015)....................................26

*B & B Hardware, Inc. v. Hargis Indus.*,
   575 U.S. 138 (2015)..............................................................................16, 17

*Bachman Sunny Hill Fruit Farms, Inc. v. Prods. Agric. Ins.*,
   57 F.4th 536 (6th Cir. 2023) .................................................................12

*Bauer v. Carty & Co.*,
   246 F. App'x 375 (6th Cir. 2007) .........................................................30

*BE & K Const. Co. v. NLRB*,
   536 U.S. 516 (2002)...............................................................................25

*Bilali v. Gonzales*,
   502 F.3d 470 (6th Cir. 2007) ................................................................16

*Bills v. Aseltine*,
   52 F.3d 596 (6th Cir. 1995) ..................................................................17

*Bobulinski v. Tarlov*,
   758 F. Supp. 3d 166 (S.D.N.Y. 2024).................................................35

*Campbell v. PMI Food Equip. Grp., Inc.*,
   509 F.3d 776 (6th Cir. 2007) ................................................................25

*Corey v. N.Y. York Stock Exch.*,
   691 F.2d 1205 (6th Cir. 1982) .........................................................13, 14

*Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   205 F.3d 906 (6th Cir. 2000) ..........................................................................12, 13

*Degussa Admixtures, Inc. v. Burnett*,
   277 F. App'x 530 (6th Cir. 2008) .............................................................................35

*EQMD, Inc. v. Farm Bureau Gen. Ins. Co.*,
   2021 WL 843145 (E.D. Mich. Mar. 5, 2021) ..........................................................27

*Est. of Thomson ex rel. Rakestraw v. Toyota Motor Corp. Worldwide*,
   545 F.3d 357 (6th Cir. 2008) ...................................................................................33

*Geomatrix, LLC v. NSF Int'l*,
   629 F. Supp. 3d 691 (E.D. Mich. 2022) ...................................................................25

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ...................................................................................10

*Graham v. Am. Cyanamid Co.*,
   350 F.3d 496 (6th Cir. 2003) ...................................................................................23

*Grow Mich., LLC v. LT Lender, LLC*,
   50 F.4th 587 (6th Cir. 2022) ....................................................................................28

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
   140 F.4th 271 (5th Cir. 2025) ............................................................................12, 15

*Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*,
   140 F.4th 613 (5th Cir. 2025) ............................................................................12, 30

*Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*,
   512 F.3d 742 (5th Cir. 2008) ............................................................................14, 15

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
   668 F.3d 393 (6th Cir. 2012) ...................................................................................19

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010).....................................................................................................23

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)..................................................................................................21

*In re Nat'l Century Fin. Enters., Inc.*,
   504 F. Supp. 2d 287 (S.D. Ohio 2007) ....................................................................19

*In re Pac One, Inc.*,
   2007 WL 2083817 (N.D. Ga. July 17, 2007)............................................................19

*Int'l Bhd. of Teamsters, Local 519 v. UPS*,
   335 F.3d 497 (6th Cir. 2003) ...................................................................................30

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018)........................................................................................28

*Knology, Inc. v. Insight Commc'ns Co.*,
   393 F.3d 656 (6th Cir. 2004) ..............................................................................25, 26

*Kolominsky v. Root, Inc.*,
   100 F.4th 675 (6th Cir. 2024) ..................................................................................10

*Malone v. Stanley Black & Decker, Inc.*,
   965 F.3d 499 (6th Cir. 2020) ...................................................................................33

*Minnix v. Sinclair Television Grp.*,
   2023 WL 3570955 (W.D. Va. May 19, 2023) ...........................................................35

*Montana v. United States*,
   440 U.S. 147 (1979)..................................................................................................16

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)..................................................................................................31

*Mulch Mfg. v. Advanced Polymer Sols.*,
   947 F. Supp. 2d 841 (S.D. Ohio 2013) ....................................................................32

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
   429 F.3d 640 (6th Cir. 2005) ...................................................................................31

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*,
   91 F.3d 790 (6th Cir. 1996) .....................................................................................33

*New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
   336 F.3d 495 (6th Cir. 2003) ...............................................................................5, 24

*NOCO Co. v. OJ Com., LLC*,
   35 F.4th 475 (6th Cir. 2022) .........................................................................21, 22, 23

*Patel v. Garland*,
   116 F.4th 617 (6th Cir. 2024) ..................................................................................13

*Penn, LLC v. Prosper Bus. Dev. Corp.*,
2011 WL 2118072 (S.D. Ohio May 27, 2011) .................................................................11, 18

*Polzin v. Barna & Co.*,
2007 WL 2710705 (E.D. Tenn. Sept. 14, 2007) ....................................................................11

*Pompy v. Moore*,
2024 WL 845859 (E.D. Mich. Feb. 28, 2024).......................................................................28

*Pro'l Real Est. Invs., Inc. v. Columbia Pictures Indus.*,
508 U.S. 49 (1993)...........................................................................................................25, 26

*Quickway Transp., Inc. v. NLRB*,
117 F.4th 789 (6th Cir. 2024) ...............................................................................................13

*Rahimi v. St. Elizabeth Med. Ctr.*,
1997 WL 33426269 (S.D. Ohio July 16, 1997).....................................................................32

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)...............................................................................................................29

*Riley v. Bondi*,
145 S. Ct. 2190 (2025)...........................................................................................................13

*Rudd v. City of Norton Shores*,
977 F.3d 503 (6th Cir. 2020) .................................................................................................10

*Santos-Zacaria v. Garland*,
598 U.S. 411 (2023)...............................................................................................................13

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
859 F.2d 434 (6th Cir. 1988) .................................................................................................24

*Solvay Pharms., Inc. v. Duramed Pharms., Inc.*,
442 F.3d 471 (6th Cir. 2006) .................................................................................................31

*Super Sulky, Inc. v. U.S. Trotting Ass'n*,
174 F.3d 733 (6th Cir. 1999) .................................................................................................35

*Taborac v. NiSource, Inc.*,
2011 WL 5025214 (S.D. Ohio Oct. 21, 2011)......................................................................29

*Taylor v. Sturgell*,
553 U.S. 880 (2008)...............................................................................................................16

*Tex. Med. Ass'n v. HHS*,
110 F.4th 762 (5th Cir. 2024) ...............................................31

*Torrance v. Rom*,
157 N.E.3d 172 (Ohio Ct. App. 2020) .........................................32

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
342 F.3d 634 (6th Cir. 2003) ...............................................18

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007) ...............................................18

*U.S. ex rel. Kramer v. Doyle*,
2022 WL 1186182 (S.D. Ohio Apr. 21, 2022) ........................18, 20, 21

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
525 F.3d 439 (6th Cir. 2008) ...........................................11, 31

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chic., Inc.*,
953 F.3d 955 (7th Cir. 2020) ...........................................25, 26

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965)........................................................25

*United States v. Fowler*,
535 F.3d 408 (6th Cir. 2008) ...............................................29

*VIBO Corp. v. Conway*,
669 F.3d 675 (6th Cir. 2012) ...........................................25, 27

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,
700 F. App'x 484 (6th Cir. 2017) ......................................16, 17

*Westmac, Inc. v. Smith*,
797 F.2d 313 (6th Cir. 1986) ...............................................26

*Worldwide Aircraft Servs. v. Worldwide Ins. Servs.*,
2024 WL 4226799 (M.D. Fla. Sept. 18, 2024) ................................12

**STATUTES**

9 U.S.C. § 10.......................................................6, 12, 30

18 U.S.C. § 1965.............................................................34

29 U.S.C. § 1185e ................................................................................................31

42 U.S.C. § 300gg-111 .................................................................................... *passim*

Ohio Rev. Code § 2747.01 ...............................................................................35

Ohio Rev. Code§ 2747.04 ...............................................................................35

Ohio Rev. Code § 2747.05 ...............................................................................35

Ohio Rev. Code § 2913.05 ...............................................................................32

Ohio Rev. Code § 2923.34 ...............................................................................32

**OTHER AUTHORITIES**

26 C.F.R. § 54.9816-8T ...........................................................................3, 5, 23

29 C.F.R. § 2590.716-8 ...............................................................................4, 5, 8

45 C.F.R. § 149.510 .................................................................3, 4, 8, 17, 21, 23

88 Fed.Reg. 88494 (Dec. 21, 2023) ...................................................................3

18B Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 4475.1 (3d ed.)........................16

Americans for Fair Healthcare, *No Surprises Act (NSA) Impact Analysis* (2023)........................24

Americans for Fair Healthcare, *No Surprises Act (NSA) Impact Analysis* (2025)........................24

Brigham and Women's Hospital, *Intraoperative Neuromonitoring* (last visited November 9, 2025) ......................................................................7

CMS, *Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties* (June 2025) ........................3, 6, 13, 22

CMS, *Submit a Petition to Revoke the Certification of a Current IDR Entity Providing Dispute Services* (last visited Nov. 5, 2025) ....................................6

Deletis & Fernandez-Conejero, *Intraoperative Monitoring and Mapping of the Functional Integrity of the Brainstem*, J. Clin. Neurol. (2016)................................7

Fed. R. Civ. P. 4 ...............................................................................................32

Fed. R. Civ. P. 9 ...................................................................................... *passim*

Fed. R. Civ. P. 11 ............................................................................................1, 10, 29

Fed. R.Civ. P. 12 .................................................................................................1, 10

FHAS, *Important Updates to CMS IDR Portal Web Forms: What You Need to Know* (Sept. 12, 2025) ..............................................................................................4

HHS et al., *Federal IDR Process Guidance for Disputing Parties* (updated Dec. 2023) ...................................................................................................................3, 4

HHS et al., *Initial Report on the Independent Dispute Resolution (IDR) Process* (Sept. 30, 2022).........................................................................................................5

Kevin B. O'Reilly, *One Wrinkle to Surprise Billing Law? Health Plans Aren't Paying Up*, Am. Med. Ass'n (Aug. 15, 2025).........................................................24

88 Ohio Jur. 3d, *Telecommunication fraud (wire fraud)* § 76 ....................................32

## INTRODUCTION

Plaintiff Anthem Blue Cross and Blue Shield underpaid medical providers who cared for the company's insureds, participated in a Congressionally mandated arbitration procedure designed to efficiently and exclusively resolve such payment disputes, and lost approximately 85% of those arbitrations. Rather than accepting, as it must, the outcome of those binding arbitrations, Anthem filed a shotgun complaint designed to collaterally attack the losing arbitration determinations (but apparently not the few where it prevailed) and to chill medical providers from accessing these federal dispute procedures in the future. In other words, it seeks a redo on thousands of individual arbitrations that it already lost. Worse, the claims are rife with conclusory allegations that do not come close to the required specificity, fail to allege the required elements of the claims, and contradict black-letter law controlling such claims. Based on demonstrably false statements Anthem made in its initial Complaint, the Defendants promptly served Anthem with a Rule 11 letter. Anthem responded by amending its Complaint, but even after doing so, Anthem's claims remain dead on arrival.

The Court should see through this ploy and dismiss Anthem's claims against Evokes, LLC, Midwest Neurology, LLC, One Care Monitoring, LLC, Value Monitoring LLC, and MPowerHealth Practice Management, LLC (collectively "the Providers" here[1]) under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). To start, this Court lacks subject-matter jurisdiction over most of Anthem's claims. The No Surprises Act expressly limits judicial review to only the ability to *vacate* awards under the Federal Arbitration Act. As such, Anthem cannot seek monetary or prospective injunctive relief in this Court under any circumstances.

---

[1] MPowerHealth Practice Management, LLC, as the name suggests, is not a medical provider like the other defendants bringing this motion. For concision, this motion refers to these defendants as "the Providers" unless otherwise indicated.

Issue preclusion also bars Anthem from re-litigating issues decided in the arbitrations. Anthem's entire fraud theory relies on allegedly false eligibility attestations. Yet for every dispute now in contention, an Independent Dispute Resolution Entity (IDRE) arbitrator has already reviewed the evidence and ruled the dispute eligible. Under the federal common law of issue preclusion, Anthem cannot get a second bite at the apple in federal court for those same eligibility determinations.

Further, Anthem has not alleged any of its claims with particularity under Rule 9(b). Anthem has not particularly alleged the Providers' role in the fraud, that the Providers proximately caused Anthem's injuries, or that Anthem actually suffered an injury traceable to each Provider's supposedly illegal actions.

And even then, the Noerr-Pennington doctrine independently shields the Providers from liability for accessing the federally created dispute procedures. The Noerr-Pennington doctrine prevents plaintiffs from imposing liability based on protected speech. Here, the Providers' statements and submissions to IDRE arbitrators qualify as protected speech, so Anthem's claims for monetary and prospective injunctive relief must be dismissed.

Finally, Anthem's claims also suffer individual defects. The reasons are many, but the decision is straightforward. This Court should dismiss Anthem's Amended Complaint in its entirety.

## BACKGROUND

**A. Congress Enacts The No Surprises Act To End Surprise Billing And Efficiently Resolve Payment Disputes Between Medical Providers And Insurers.**

Effective January 1, 2022, Congress enacted the No Surprises Act. The statute protects patients from large bills for certain out-of-network medical services when the patient's insurance company refuses to pay in full. 42 U.S.C. § 300gg-111. If the insurer and provider disagree on

the proper amount to be paid for the patient's care, the NSA requires them to negotiate between themselves, rather than billing the patient for any balance. If negotiations fail, either side can invoke binding arbitration (known as the Independent Dispute Resolution Process or "IDR") where an arbitrator will determine a reasonable payment amount. *Id.* § 300gg-111(c)(2). By statute, the pre-IDR negotiations last for thirty days. *Id.* § 300gg-111(c)(1)(A). During those negotiations, the parties have their *first* chance to raise any potential eligibility issues.[2] If negotiations fail, either side can initiate IDR arbitration proceedings. *Id.* § 300gg-111(c)(1)(B). The initiating party attests that the dispute is eligible for the proceedings. 45 C.F.R. § 149.510(b)(2)(iii)(A)(6). The parties then jointly participate in the selection of an arbitrator to oversee the dispute off a list of federally certified options called an Independent Dispute Resolution Entity (IDRE). 42 U.S.C. § 300gg-111(c)(1)(B), (c)(4). After an IDRE's selection, each party pays an IDRE fee intended to compensate them for their role as an arbitrator. 26 C.F.R. § 54.9816-8T(d)(1).

At the start of each proceeding, the IDRE must independently find that the dispute is eligible for the IDR arbitration.[3] 45 C.F.R. § 149.510(c)(1)(v). IDREs receive their fee in part for "the costs incurred in determining" eligibility. 88 Fed.Reg. 88494, 88505 (Dec. 21, 2023). At this point, the non-initiating party gets its *second* chance—indeed, an obligation—to raise eligibility concerns. "[I]f the non-initiating party believes that the Federal IDR process is not applicable, the non-initiating party *must* . . . provide information regarding the Federal IDR process's

---

[2] *See* HHS et al., *Federal IDR Process Guidance for Disputing Parties* 13 (updated Dec. 2023), https://www.cms.gov/files/document/federal-idr-guidance-disputing-parties-march-2023.pdf ("If either party believes that the other party is not in compliance with the surprise billing protections, the party may file a complaint with the No Surprises Help Desk.").

[3] "The Departments . . . emphasize that the certified IDR entities are responsible for ensuring that eligibility and payment determinations are accurate." CMS, *Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties* 2 (June 2025), https://www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf.

inapplicability *through the Federal IDR portal*[.]" 45 C.F.R. § 149.510(c)(1)(iii) (emphases added). Agency guidance echoes this requirement:

> If the non-initiating party believes that the Federal IDR Process is not applicable, the non-initiating party **must** notify the Departments by submitting the relevant information. . . . This notification must include information regarding the Federal IDR Process' inapplicability.[4]

These requirements again confirm that insurers (like Anthem) have mandatory obligations to contest eligibility *during* the administrative process. The "information must be provided" promptly, "not later than **1 business day** after the end of the 3-business-day period for certified IDR entity selection." *Id.* And from this information, "[t]he certified IDR entity must determine whether the Federal IDR Process is applicable." *Id.*

This disclosure requirement exists due to the frequent asymmetries of information between medical insurers and medical providers. Regulations try to balance these asymmetries by, for example, requiring insurers like Anthem to submit applicable insurance plan coverage information to the IDRE. 29 C.F.R. § 2590.716-8(c)(4)(i)(A)(3)(iii); *see also* FHAS, *Important Updates to CMS IDR Portal Web Forms: What You Need to Know* (Sept. 12, 2025)[5] (noting that the IDR portal requires insurers (as the parties with access to necessary plan information) to "attest to whether the health plan type selected by the initiating party is correct" and fix it if it is wrong).

**This mandatory requirement for Anthem to dispute eligibility through the portal is completely omitted from Anthem's complaint.** If the IDRE finds a dispute ineligible, it "must notify . . . the parties within 3 business days of making that determination." 29 C.F.R. § 149.510(c)(1)(v). To remain certified and continue hearing disputes, IDREs must properly perform their duties. 42 U.S.C. § 300gg-111(c)(4)(A). Indeed, official government data shows

---

[4] *Federal IDR Process Guidance for Disputing Parties*, *supra* n.2 at 17 (emphasis added).
[5] Archived at https://perma.cc/D93L-AMYB.

that IDREs conclude that disputes are ineligible 17.6% of the time.[6]

The parties then each submit one payment offer to the IDRE, along with information supporting their offer amounts. *Id.* § 300gg-111(c)(5)(B), (C). Here too, participants have a *third* chance to challenge jurisdiction and any award—the parties can submit "any information relating to such offer submitted by either party," including any legal objections to the underlying dispute through the portal. *Id.* § 300gg-111(c)(5)(B)(ii); *see* 29 C.F.R. § 2590.716-8(c)(4)(i)(B) (discussing submission of offers on the portal and that each party "[m]ay each submit to the certified IDR entity any information relating to the offer that was submitted by either party"). At this stage, the parties also pay an administrative fee intended to compensate HHS for administering the program. 26 C.F.R. § 54.9816-8T(d)(2)(i). In baseball-style arbitration, the IDRE considers the information submitted and then picks the offer that is most reasonable. 42 U.S.C. § 300gg-111(c)(5)(A). It must select either the amount proposed by the payor or the amount proposed by the provider and cannot split the difference. This system is thus designed to encourage parties to propose reasonable figures. By law, in choosing the most reasonable offer, IDREs cannot consider the provider's usual and customary charges—or the reimbursement rate that would have been paid by Medicare or Medicaid—for the medical procedure. *Id.* § 300gg-111(c)(5)(D). Arbitration awards are "binding," and payment "shall be made . . . not later than 30 days after the date on which such determination is made." *Id.* § 300gg-111)(c)(5)(E)(i)(I), (c)(6). The prevailing party has its IDRE fee refunded but not its administrative fee. 26 C.F.R. § 54.9816-8T(d)(1)–(2).

---

[6] HHS et al., *Initial Report on the Independent Dispute Resolution (IDR) Process* 8 (Sept. 30, 2022), https://www.cms.gov/files/document/initial-report-idr-april-15-september-30-2022.pdf (noting that, during the studied period, IDREs ruled that 15,895 of 90,078 disputes were ineligible, which is approximately 17.6%). The Court "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice" when considering a motion to dismiss. *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

The Centers for Medicare & Medicaid Services, which oversees the program, has introduced multiple ways for the losing party to seek relief. Here, an aggrieved party gets its *fourth* chance to dispute eligibility.[7] For example, CMS has indicated that for "errors identified after dispute closure," parties may re-open closed arbitration proceedings for "jurisdictional error[s]" such as where the IDRE "incorrectly determines" eligibility.[8] Parties can even "petition to revoke" an IDRE's certification.[9] Reasons to de-certify include IDREs that have "a pattern or practice of noncompliance with any of the requirements applicable to certified IDR entities" and that have "committed or knowingly participated in fraudulent or abusive activities, including submission of false or fraudulent data[.]"[10]

Consistent with Congress's intent to keep these disputes *out* of the courts, however, the Act strictly limits judicial review. "A determination of a certified IDR entity . . . *shall not be subject to judicial review*, except in a case" that would allow a court to vacate an award under section 10(a) of the Federal Arbitration Act. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (emphasis added); *see* 9 U.S.C. § 10(a)(1)–(4).

**B. HaloMD And The Providers Bring IDR Arbitrations, And IDREs Often Select Their Offers Over Anthem's.**

Evokes, LLC, Midwest Neurology, LLC, One Care Monitoring, LLC, and Value Monitoring LLC provided intraoperative neuromonitoring and other critical services for patients who were members of Anthem health plans. Such cutting-edge care helps "improve the safety of

---

[7] *Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties supra* n.3 at 1.

[8] *Id.* at 3.

[9] CMS, *Submit a Petition to Revoke the Certification of a Current IDR Entity Providing Dispute Services*, (last visited Nov. 5, 2025), https://www.cms.gov/nosurprises/help-resolve-payment-disputes/submit-feedback-on-certified-organizations.

[10] *Id.*

high-risk neurosurgical procedures" and "increase the likelihood of successful functional outcomes in many patients."[11]  Anthem underpaid for those services.  As a result, these medical providers sought additional payment from Anthem through the IDR process, as Congress intended. HaloMD, for its part, helps providers navigate this novel process.

Since the IDR arbitration process's inception in 2022, medical providers have had success using the IDR arbitration procedures.  Am. Compl., R. 25, PageID #151.  The independent third-party IDREs have selected payment offers from medical providers—such as the medical providers here—as more reasonable than insurers' offers approximately 85% of the time.  *Id.*  Yet rather than focusing on its own pervasive initial underpayments and subsequent unreasonable offers in the IDR arbitrations (which IDREs rejected in favor of more reasonable proposals from providers again and again), Anthem blames Defendants.

Anthem alleges that HaloMD and the Providers have concocted a scheme through which they (1) initiated ineligible IDR proceedings, (2) flooded the system with claims, and then (3) submitted inflated payment offers.  *Id.*, PageID #151–61.  But Anthem glosses over a necessary fourth step: neutral, certified, and jointly selected IDREs reviewed the eligibility information, concluded the dispute is eligible, reviewed both offers and supporting evidence, and *then selected HaloMD and the Providers' offer*.  This omission is telling.  Still, Anthem's allegations—and other omissions—deserve a closer look.

First, Anthem alleges that HaloMD falsely attested that claims are eligible for the IDR process.  *Id.*, PageID #144–48, 154–56.  Anthem contends that HaloMD misrepresented when and whether negotiations took place, the applicability of comparable state laws, and the coverage of

---

[11]  Brigham and Women's Hospital, *Intraoperative Neuromonitoring* (last visited November 9, 2025), https://skullbase.bwh.harvard.edu/ionm/; Deletis & Fernandez-Conejero, *Intraoperative Monitoring and Mapping of the Functional Integrity of the Brainstem*, J. Clin. Neurol. (2016), available at https://pubmed.ncbi.nlm.nih.gov/27449909/.

Anthem's insurance plans.[12] *Id.*

But Anthem *admits* it was aware in real time of these alleged issues. *Id.*, PageID #147–48, 155–56, 159, 172–84. Even now, Anthem knows the number of supposedly ineligible IDR awards it has lost and the reasons for purported ineligibility. *Id.*, PageID #162. Anthem does not allege, however, that any neutral and jointly-selected IDRE ever failed to perform an eligibility determination. *See* 45 C.F.R. § 149.510(c)(1)(v). And despite this, Anthem alleges that IDREs ruled against Anthem's position in "most" cases. Am. Compl., R. 25, PageID #159.

So what then did Anthem do with all this knowledge? Anthem tells us it "directly notifie[d] [the Providers] that the items or services at issue in their IDR initiation violate the NSA's eligibility requirements." *Id.*, PageID #155; *see id.*, PageID #154–56, 159, 172–84. **But tellingly, Anthem fails to allege that it contested eligibility *to IDREs*, as Anthem is *required* to do.** 45 C.F.R. § 149.510(c)(1)(iii). Anthem devotes entire pages in its Amended Complaint describing the information that the Providers submitted to the IDR portal, yet Anthem never once alleges that it submitted information to this same portal. Amazingly, Anthem goes so far as to complain that IDREs base eligibility determinations "on incomplete, one-sided information." Am. Compl., R. 25, PageID #149. Yet Anthem alone can and must provide certain information necessary for determining eligibility, like the coverage of its own plans. *Id.*, PageID #162; *see* 29 C.F.R. § 2590.716-8(c)(4)(i)(A)(3)(iii) (Anthem "[m]ust . . . submit to the [IDRE] . . . information on the coverage area of the plan"). In other words, Anthem implicitly concedes that it withheld crucial eligibility information from IDREs despite Anthem's clear duty to disclose the same.

---

[12] Anthem also briefly suggests HaloMD submitted untimely claims. *See* Am. Compl., R. 25, PageID #177. But merely submitting an untimely claim would not constitute a fraudulent misrepresentation. In any event, this allegation suffers the same defects as Anthem's other alleged misrepresentations.

Anthem next alleges that HaloMD flooded the IDR system with disputes. Am. Compl., R. 25, PageID #156–59. Anthem does not assert these claims are fraudulent in the sense that medical services were not actually performed. Nor does Anthem identify any source within the No Surprises Act setting some arbitrary limit on the number of disputes a Provider may bring when it is repeatedly underpaid. Indeed, the Providers could not submit a "flood" of disputes if Anthem did not first underpay a "flood" of claims. In any event, Anthem chiefly complains about timing, which does not support any of its claims.

Moving on, Anthem alleges HaloMD fraudulently submitted "inflated" payment offers "above the Providers['] billed charges." *Id.*, PageID #160. But Anthem quickly concedes, as it must, that IDREs by law "cannot consider the provider's charges" at all. *Id.*, PageID #160; *see* 42 U.S.C. § 300gg-111(c)(5)(D). Beyond this bizarre contradiction, Anthem does not otherwise explain how these "inflated" offers actually violate the No Surprises Act's text or its regulations. Nor does it acknowledge the key point: If the Providers' offers were actually so "inflated" when compared to Anthem's offers, then Anthem would win, not lose, the vast majority of the time. Or at least some of the many presiding IDREs would have flagged the inflated amounts.

Finally, HaloMD and the Providers purportedly round out their "scheme" when certified, neutral IDREs—whom Anthem had a role in selecting—look at the evidence and select HaloMD and the Providers' offer over Anthem's offer. Am. Compl., R. 25, PageID #160. But here as well, Anthem's omissions are telling. Anthem does not allege bribery or corruption with any IDREs. Anthem does not allege the IDREs considered impermissible factors. And Anthem does not allege why neutral IDREs routinely reject Anthem's offers.

How has Anthem responded? Anthem has *not* sought to re-open the supposedly ineligible and inflated IDR awards. Anthem has *not* challenged the credentials of any IDRE for a failure to

9

properly assess eligibility or for considering improper factors. Instead, Anthem brought this lawsuit against HaloMD and the Providers in an attempt to punish them for their success and to chill them from pursuing future IDR arbitrations. *See* Compl., R. 1. Anthem pleaded a shotgun assortment of claims under the federal civil RICO statute, the Ohio Corrupt Activity Act, theft by deception, civil conspiracy, the Ohio Deceptive Trade Practices Act, fraudulent misrepresentation, ERISA, and for declaratory and injunctive relief. Anthem also asks to vacate thousands of IDR awards en masse without describing, as it must, the alleged errors in each individual award.

After Anthem filed suit, the Providers sent Anthem a letter pointing out that the Complaint contained verifiably false allegations in violation of its obligations under Rule 11. Anthem filed an amended complaint removing certain allegations but refused to dismiss the case. *See* Am. Compl., R. 25.

Accordingly, the Providers now move to dismiss Anthem's claims under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(1) allows defendants to file a motion to dismiss based on a court's lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(2) permits a defendant to seek dismissal when a court lacks personal jurisdiction over them. Fed. R. Civ. P. 12(b)(2). Rule 12(b)(6) "is a test of the plaintiff's cause of action as stated in the complaint[.]" *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The court accepts the complaint's factual allegations but disregards all legal conclusions. *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020). The factual allegations must "plausibly" allege each element of each claim. *Id.* at 511–12.

Moreover, because Anthem's claims all sound in fraud, it must plead its allegations with particularity under Rule 9(b). *Kolominsky v. Root, Inc.*, 100 F.4th 675, 683 (6th Cir. 2024). Under

Rule 9(b), "a complaint of fraud, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which the plaintiff relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (citation modified).

Rule 9(b) plays a vital role in vetting RICO claims. "[T]he mere invocation of the [RICO] statute has such an in terrorem effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute." *Polzin v. Barna & Co.*, 2007 WL 2710705, at *4 (E.D. Tenn. Sept. 14, 2007) (citation modified). As a result, this Court has recognized that "[c]ourts have been particularly sensitive to [Rule] 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are . . . wire fraud, and have further required specific allegations as to *which* defendant caused *what* to be [wired], and *when* and *how* each [wire] furthered the fraudulent scheme." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 2011 WL 2118072, at *11 (S.D. Ohio May 27, 2011).

## ARGUMENT

The Court should dismiss Anthem's collateral attack on the IDR proceedings for multiple reasons. *First*, this Court lacks subject-matter jurisdiction to hear most of Anthem's claims. *Second*, issue preclusion estops Anthem from re-litigating the IDREs' eligibility determinations. *Third*, Anthem has not satisfied Rule 9(b). *Fourth*, Noerr-Pennington immunity protects the Providers' petitioning activity in the IDR proceedings. *Fifth*, Anthem's federal and state claims suffer additional individual defects. *Finally*, this Court lacks personal jurisdiction over MPowerHealth specifically.

**A. This Court Lacks Subject-Matter Jurisdiction Over Most Of Anthem's Claims (Counts I–VII, IX–X).**

This Court lacks jurisdiction over Anthem's claims for monetary damages and prospective relief, Counts I through VII, IX, and X. In the No Surprises Act, Congress was emphatic: "A determination of a certified IDR entity . . . *shall be binding* upon the parties involved . . . and . . . *shall not be subject to judicial review*, except in a case" that would allow a court to *vacate* the award under the Federal Arbitration Act. 42 U.S.C. § 300gg-111(c)(5)(E)(i) (emphases added); *see* 9 U.S.C. § 10(a)(1)–(4). Given this express incorporation, the *exclusive means* to challenge an IDR award is to seek vacatur under the FAA. *Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, 140 F.4th 613, 620 (5th Cir. 2025) ("*Guardian Flight II*"); *Worldwide Aircraft Servs. v. Worldwide Ins. Servs.*, 2024 WL 4226799, at *1–2 (M.D. Fla. Sept. 18, 2024). Indeed, the "NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the" Federal Arbitration Act that allow vacatur. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025) ("*Guardian Flight I*").

The Federal Arbitration Act, in turn, prohibits direct actions that seek "damages for an alleged wrongdoing that compromised an arbitration award and caused the party injury[.]" *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 910 (6th Cir. 2000). "When the ultimate objective of a suit is to rectify the alleged harm caused by an unfavorable arbitration award, a party must follow the proper procedure for challenging an arbitration award under the" Act. *Bachman Sunny Hill Fruit Farms, Inc. v. Prods. Agric. Ins.*, 57 F.4th 536, 542 (6th Cir. 2023) (citation modified). This includes allegations of fraud committed by the parties to the arbitration.

*See Decker*, 205 F.3d at 908. In short, FAA *vacatur is the "exclusive remedy"* against improper or invalid IDR proceedings (at least in court).[13] *Id.* at 911 (emphasis added).

Congress can limit courts' ability to hear cases. *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023). Some limits are jurisdictional, which "set[] the bounds of the court's adjudicatory authority." *Id.* While Congress must "clearly state[]" when a rule is jurisdictional, no "magic words" are needed. *Id.*; *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025). For example, a jurisdictional rule uses "language demarcating a court's power." *Riley*, 145 S. Ct. at 2202.

Here, the No Surprises Act's limit on judicial review speaks to the court's power, not litigants' duties—in other words, it uses "language demarcating [the] court's power." *See id.* And the Act's carveout for judicial review to vacate "strongly implies" that none other is permitted. *Patel v. Garland*, 116 F.4th 617, 624 (6th Cir. 2024). Just last year, the Sixth Circuit held that a similar statute created a jurisdictional bar that, like here, deprived jurisdiction for some arguments but not for others. *See, e.g.*, *Quickway Transp., Inc. v. NLRB*, 117 F.4th 789, 818 (6th Cir. 2024) ("[N]o unraised objections shall be considered by the court" deemed jurisdictional). Given this jurisdictional limitation imposed by Congress, Anthem cannot pursue claims for money damages or prospective injunctive relief in Counts I through VII, IX, and X. *Decker*, 205 F.3d at 910.

The Sixth Circuit's decision in *Corey v. New York Stock Exchange* is instructive. 691 F.2d 1205 (6th Cir. 1982). There, a plaintiff participated in an arbitration sponsored by the NYSE. *Id.* at 1207. Afterward, the plaintiff sued the NYSE for damages, alleging wrongdoing in the arbitration. *Id.* at 1208. The Sixth Circuit saw through this gambit, holding that "the federal

---

[13] No doubt, Anthem has administrative avenues to relief still open to it. Anthem can seek to re-open the awards if they truly believe that IDR awards were issued for ineligible claims. *Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties*, *supra* n.3 at 1. Yet Anthem apparently prefers the public spectacle of a civil RICO claim.

Arbitration Act provides the exclusive remedy for challenging acts that taint an arbitration award[.]" *Id.* at 1211–12. Because the "[a]llegations of wrongdoing raised by [the plaintiff] in his complaint [were] squarely within the scope of section 10 of the Arbitration Act[,]" the plaintiff could not pursue damages. *Id.* Nor could plaintiff "transform" his "impermissible collateral attack into a proper independent direct action by . . . altering the relief sought." *Id.* at 1213.

Here too, Anthem cannot evade the statutory limitation via an "impermissible collateral attack." *Id.* at 1212. The vacatur provision is Anthem's "exclusive remedy for challenging acts that [supposedly] taint" IDR awards, and Anthem cannot avoid that constraint and seek damages (*i.e.*, "altering the relief sought"). *Id.* at 1211, 1213.

The Fifth Circuit likewise applied this doctrine to dismiss civil RICO and state fraud claims premised on alleged fraud in an arbitration. *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742 (5th Cir. 2008). In *Gulf Petro*, the plaintiff alleged federal civil RICO claims and state fraud claims based on the defendants' fraudulent scheme during an arbitration. *Id.* at 747. The plaintiff alleged that the defendants bribed the arbitrator and that the arbitrator had improper business dealings with the defendants (a far cry, of course, from filing an arbitration that allegedly lacked jurisdiction). *Id.* at 749.

Relying on Sixth Circuit precedent, the Fifth Circuit rejected these collateral attacks, even where the bribery and corruption allegations were analytically "separate" from the arbitration's merits. *Id.* at 750. "Though cloaked in a variety of federal and state law claims," the court found that the "complaint amounts to no more than a collateral attack on the [arbitration award] itself" and was thus subject to dismissal. *Id.* In so holding, the court recognized that federal law bars most claims "alleging that wrongdoing had tainted the arbitration proceedings and caused unfair awards." *Id.* Notably, the plaintiff's "harm was not caused by the alleged acts of wrongdoing in

14

and of themselves"; "[r]ather, it resulted from the impact that these acts had on the" arbitration award. *Id.*  The court affirmed the dismissal for lack of subject-matter jurisdiction. *Id.* at 753.

Anthem's claims suffer the same fate.  Anthem's federal and state law claims are improper collateral attacks alleging "wrongdoing [that] tainted the arbitration proceedings and caused unfair awards." *Gulf Petro*, 512 F.3d at 750.  Anthem's supposed harm "resulted from the impact that these acts had on" prompting the IDREs' awards. *Id.*; *see, e.g.*, Am. Compl., R. 25, PageID #169 (claiming Defendants have incentives to seek inflated awards).  This Court thus lacks jurisdiction.

And Congress's choice to insulate the judiciary from these types of collateral challenges makes sense.  Congress passed the No Surprises Act and created the IDR process, in part, to help efficiently resolve out-of-network disputes.  These cases are complex.  *Cf. Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2016 WL 10651033, at *1 (C.D. Cal. May 16, 2016) (noting how set of out-of-network contract disputes represent "the most complex civil matter currently pending in the Central District of California").  Allowing losing parties to litigate—and re-litigate—the merits of these disputes would sap judicial resources and costs associated with emergency care.  Congress accordingly preferred "an administrative enforcement mechanism" to "handle most award disputes instead of throwing open the floodgates of litigation." *Guardian Flight I*, 140 F.4th at 277.  So Congress funneled the disputes into an IDR process that "shall be binding upon the parties involved," 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), along with "a strictly limited form of judicial review" for challenges to the award, *Guardian Flight I*, 140 F.4th at 277.  This jurisdictional limitation provides more certainty for all parties involved in the IDR process— and avoids flooding the federal judiciary with additional complex emergency medical disputes.

In sum, this Court should dismiss for lack of subject-matter jurisdiction over Anthem's claims for monetary damages and prospective relief in Counts I through VII, IX, and X.

**B. The Federal Common Law Of Issue Preclusion Estops Anthem From Re-Litigating The IDREs' Dispute Eligibility Determinations (Counts I–VII, IX–X).**

Issue preclusion also requires dismissal here of all claims seeking monetary or prospective injunctive relief, as Anthem seeks via Counts I through VII, IX, and X in the Amended Complaint. Anthem had a full opportunity to litigate dispute eligibility and still lost, so issue preclusion bars Anthem from re-litigating the eligibility of those same disputes in this Court. Issue preclusion "foreclose[es] relitigation of a matter that has been litigated and decided." *Bilali v. Gonzales*, 502 F.3d 470, 474 (6th Cir. 2007) (citation modified). The doctrine protects litigants "from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

Issue preclusion includes not only court rulings but also administrative determinations and arbitration awards. *B & B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 148 (2015). Where Congress authorizes administrative adjudicators to resolve disputes, Congress is presumed to have "legislated with the expectation that the principle [of issue preclusion] will apply" to those adjudicators' decisions except those limited circumstances "when a statutory purpose to the contrary is evident." *Id.* (citation omitted). And the Sixth Circuit has made clear that issue preclusion can attach to issues decided in arbitration. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 F. App'x 484, 489 (6th Cir. 2017); *see* 18B Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 4475.1 (3d ed.) ("If any party dissatisfied with the award were left free to pursue independent judicial proceedings on the same claim or defenses, arbitration would be substantially worthless.").

Federal common law determines the preclusive effect of a federal tribunal's decision, like an IDRE's determinations. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal law,

issue preclusion attaches when used as a defense if four elements are met: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; [and] (4) the party against whom [collateral] estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Bills v. Aseltine*, 52 F.3d 596, 604 (6th Cir. 1995).

In this case, issue preclusion prohibits Anthem from re-litigating in this forum the IDRE eligibility determinations previously rendered. Congress did not disturb the presumption of preclusion. *See B & B Hardware*, 575 U.S. at 148. And all four issue preclusion elements are satisfied. *First*, for each contested award, the IDRE ruled against Anthem on eligibility—the cornerstone and first step of Anthem's fraud-scheme theory. Am. Compl. R. 25, PageID #154–56. *Second*, every IDR award necessarily relies on an eligibility finding; ineligible disputes did not result in awards. 45 C.F.R. § 149.510(c)(1)(v). *Third*, each IDR award represents a final judgment on the merits. *Fourth*, Anthem had a full and fair opportunity to contest eligibility in each IDR proceeding. *Id.* § 149.510(c)(1)(iii); *see W.J. O'Neil*, 700 F. App'x at 492–93 (holding that arbitration procedures provided full and fair opportunity to litigate). *See* Am. Compl., R. 25, PageID #147–48, 155–56, 159, 172–84 (Anthem admitting it knew disputes were ineligible); *supra* 3–6 (discussing many times where an insurer like Anthem can—and must—contest eligibility during the IDR process). Both under the No Surprises Act's text and under federal common law, then, this Court cannot entertain Anthem's claims for monetary and prospective relief.

## C.  Anthem Has Not Alleged Fraud With The Required Particularity Under Rule 9(b) (Counts I–X).

All of Anthem's claims, including its vacatur claim, also fail to allege fraud with the required particularity under Rule 9(b). Anthem baldly asserts that thousands of individual

proceedings were supposedly subject to a fraud without providing the requisite details to sustain such wide-ranging claims. The Federal Rules do not permit such tactics.

### 1. Anthem has not particularly alleged the Providers' role.

First, Anthem improperly lumps all the defendants together. Under Rule 9(b), a plaintiff cannot plead "blanket references" of unlawful activity against all defendants. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (*Bledsoe I*). "Put another way, a plaintiff may not rely on allegations of fraud that lump all defendants together, without separately explaining each defendant's role in the alleged fraudulent conduct." *U.S. ex rel. Kramer v. Doyle*, 2022 WL 1186182, at *7 (S.D. Ohio Apr. 21, 2022).

"Rule 9(b) requires a plaintiff to adequately allege each element of" each claim against each defendant. *Id.* In doing so, the plaintiff must appraise "each defendant" of "the fraudulent conduct with which he individually stands charged." *Bledsoe I*, 342 F.3d at 643. Plausible fraud allegations against one defendant will not bootstrap deficient allegations against another. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) (*Bledsoe II*). "Allowing such a complaint to go forward *in toto* would" deprive defendants of Rule 9(b)'s protections. *Id.* This principle applies with special force to RICO cases "in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *See Penn*, 2011 WL 2118072, at *11 (emphasis original).

Here, despite suing eight defendants, including four physician practices and their managing entity, Anthem repeatedly alleges that "Defendants" engaged in a racketeering scheme, without specifying each defendant's specific role in causing the *thousands* of supposedly fraudulent IDR awards. Am. Compl., R. 25, PageID #130–33, 151–61, 168. In fact, Anthem does not even bother to allege that the Providers *themselves* made the allegedly false attestations. *Id.*,

PageID #156, 172–84. In Anthem's version, the medical providers were merely "the basis for initiating IDR process disputes[,]" and MPowerHealth managed them. *Id.*, PageID #166; *see also id.*, PageID #171. These vague and terse allegations fall woefully short of Rule 9(b)'s requirements.

No doubt, Anthem alleges the Providers *received* awards in excess of billed amounts for their medical services (although, as discussed below, Anthem does not allege it actually paid all those awards). *Id.*, PageID #133. Anthem never specifies what the Providers actually *did*— beyond caring for Anthem's insureds as they are required by federal law. Anthem never alleges that any medical provider or MPowerHealth falsified medical procedures. Anthem never alleges that any medical provider or MPowerHealth instructed HaloMD to file ineligible IDR proceedings or submit inflated offers. Nor does Anthem allege any particular meetings or communications occurred to plan and further this alleged scheme. So Anthem's barebones allegations are insufficient to demonstrate what action each Defendant took to further the alleged "scheme." *See In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 315 (S.D. Ohio 2007) (finding fraud complaint deficient that "contain[ed] no particularized allegations about what role each" defendant "played in preparing" fraudulent materials). As one court put it, these allegations are "little more than a bare assertion that [each of the Providers] somehow share blame for [another defendant's] conduct, with no attempt to specify their individualized involvement. Rule 9(b) requires more— much more." *In re Pac One, Inc.*, 2007 WL 2083817, at *8 (N.D. Ga. July 17, 2007).

Anthem also alleges that the Providers were aware that HaloMD submitted illegible disputes on their behalf. Am. Compl., R. 25, PageID #156, 168. But this allegation at most goes to knowledge; it does nothing to prove any one medical provider or MPowerHealth acted to further the supposed fraud scheme. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404

19

(6th Cir. 2012) (describing scienter as a separate element).

Anthem cannot side-step this defect by alleging that the providers and MPowerHealth are swept up in the "overarching" fraud. *Doyle* illustrates the point. There, the plaintiff pleaded False Claims Act fraud claims against companies and their owner using general allegations of a fraud scheme and suggesting that all defendants took part in the scheme. 2022 WL 1186182, at \*12. But the Court rejected this theory and held that the plaintiff had to allege facts supporting "each element" of the claim against each defendant. *Id.* at \*7, \*12–14. For example, although plausibly alleging certain defendant companies submitted false claims, the plaintiff had failed to allege their defendant owner had a hand in the fraud. *Id.* Indeed, the complaint "identifie[d] no specific false statements *by* [*the owner*] *himself* in connection with any of his example" instances of false claims. *Id.* at \*13 (emphasis original). And the plaintiff offered no particular evidence he "instructed" his employees to submit those false statements. *Id.* The Court dismissed most of the defendants, including the owner. *Id.* at \*14.

Here too, Anthem cannot bootstrap the medical providers and MPowerHealth into this case with general fraud scheme allegations. Rather, Anthem must particularly allege "each element" of each claim against each medical provider and MPowerHealth. *Id.* at \*7. Anthem has not. As in *Doyle*, Anthem's fraud scheme allegations fall short because it "identifies no specific false statements *by* [*each medical provider or MPowerHealth*] in connection with any of [Anthem's] example" IDR arbitrations. *Id.* at \*13 (emphasis original). On the contrary, Anthem tells us that HaloMD "makes the[] false attestations of eligibility when initiating the IDR process on behalf of the Provider[s]." Am. Compl., R. 25, PageID #156; *see id.*, PageID #171. And Anthem has no allegations that any medical provider or MPowerHealth "instructed" HaloMD to make false attestations, let alone "communicated" with HaloMD about the supposed fraud—and

20

certainly none with particularity. *Doyle*, 2022 WL 1186182, at \*13.

### 2. Anthem has not particularly alleged proximate causation.

Anthem has likewise failed to plead with particularity that the alleged misrepresentations proximately caused Anthem's damages. Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). For every award being challenged, a neutral IDRE performed an independent investigation, found eligibility satisfied, and then "caused" the supposed injury by selecting the higher offer (and indeed was required to perform this investigation rather than relying upon the mere attestation of the party). *See supra* 3–4. In doing so, the IDREs broke any causal chain between the supposed eligibility misrepresentations and the awards. *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 485 (6th Cir. 2022) ("When a third party that could have prevented the harm acts to cause the harm instead, then the chain of causation is broken.").

And that's not all. Anthem also cannot show proximate causation because Anthem, based on its own allegations, could have prevented the injury. 45 C.F.R. § 149.510(c)(1)(iii) obligated Anthem to raise any jurisdictional defect to the IDRE, to the extent one existed. Anthem completely omits this requirement. So even assuming ineligible claims were submitted, Anthem (allegedly) had the *information*, the *means*, and the *obligation* to contest eligibility. *See* Am. Compl., R. 25, PageID #147–48, 155–56, 159, 172–84. Assuming Anthem raised these objections to IDREs and still lost, those IDRE determinations were the cause of any supposed injury.

But if Anthem *knowingly withheld* these eligibility objections from the IDREs—which Anthem seemingly concedes by alleging that IDREs act on "one-sided information"—Anthem slept on its rights and proximately caused its own supposed injury. *Id.*, PageID #149. "When the plaintiff's own conduct could have prevented the harm but didn't, the plaintiff's actions are considered a superseding cause." *NOCO*, 35 F.4th at 486. And even today, Anthem could seek to

re-open and undo awards for "jurisdictional error[s]" like eligibility.[14]  It does not allege that it has done so, because it has not, further exposing the improper motives driving this litigation.  Given all of this, Anthem must look in the mirror, rather than faulting the Providers.

The Sixth Circuit has rejected claims with similar flaws.  In *NOCO*, a manufacturer complained to Amazon about a company improperly reselling the manufacturer's wares online. *Id.* at 478.  Amazon conducted an independent investigation and demanded the reseller provide documents showing its authorization to resell, which the reseller failed to do.  *Id.* at 479.  Amazon removed the reseller's account, and the reseller sued the manufacturer claiming it had lied to Amazon about the reseller's status.  *Id.* at 479–80.

The court held that the reseller could not prove proximate causation for multiple reasons. *Id.* at 483.  Relevant here, two intervening causes each broke the causal chain: Amazon's independent investigation and the reseller's failure to give sufficient proof documents to Amazon. *Id.*  First, "even if [the manufacturer's] complaint alone set off Amazon's investigation, Amazon had the chance to 'eliminate the hazard' and didn't.  So Amazon's independent investigation was an intervening cause that relieves [the manufacturer] of any responsibility." *Id.* at 485–86.  Second, the reseller "could have stopped the harm" by producing sufficient authorization documents.  *Id.* at 486.  But the reseller did not, and the documents it did provide "didn't convince Amazon that it was following the policy."  *Id.*  For each of those reasons, the manufacturer could not be liable.

Anthem faces both problems here.  First, IDREs performed independent investigations to assess eligibility in every arbitration.  So even if someone misrepresented eligibility, IDREs had "the chance to 'eliminate the hazard' and didn't."  *Id.* at 485–86.  Second, Anthem's own

---

[14] *Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties*, *supra* n.3 at 1, 3.

22

allegations suggest it "could have stopped the harm" because Anthem alleges it can prove the disputes were ineligible. *Id.* at 486. Indeed, the regulations explicitly mandate that Anthem "provide information regarding the Federal IDR process's inapplicability through the Federal IDR portal." 45 C.F.R. § 149.510(c)(1)(iii). Despite this, Anthem either could not or never even tried to "convince" IDREs of that. *NOCO*, 35 F.4th at 486. On both fronts, the causal chain was broken.

Finally, Anthem theorizes that the Providers submitted "inflat[ed]" offers. Am. Compl. R. 25, PageID #160. Anthem fails to allege how inflated bids proximately caused injury when, in every case, the IDRE remained free to select Anthem's competing and lower proposal. In fact, Anthem alleges that neutral IDREs rejected Anthem's proposals 85% of the time after seeing the evidence. *Id.* Here as well, IDREs broke the causal chain. *NOCO*, 35 F.4th at 485–86.

### 3. Anthem has not particularly alleged injury.

Anthem also has not particularly alleged any injury traceable individually to each medical provider or MPowerHealth. Anthem likes to brandish the sum total of IDR *awards* it has lost.[15] *See* Am. Compl., R. 25, PageID #161, 172–84. But this is a sleight of hand. Anthem notably does not allege that it actually *paid* this total. Why? Because Anthem has not. Nor does it allege any particular number of awards it paid, if any. Indeed, publicly available data shows that insurers like Anthem frequently refuse to pay awards regardless of whether Congress has explicitly deemed

---

[15] Anthem also alleges it has paid fees. *See, e.g.*, Am. Compl., R. 25, PageID #158. But fraud typically requires a showing that the material misrepresentation *caused* the injury. *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003). Even for civil RICO claims, the alleged predicate offense itself—here, wire fraud—must proximately cause the injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). But administrative fees are due in every dispute regardless of outcome. 26 C.F.R. § 54.9816-8T(d)(2). And Anthem effectively only pays IDRE fees if the IDRE rules against Anthem, breaking any causal chain to fees as a form of damages. *Id.* § 54.9816-8T(d)(1) (prevailing party is refunded its IDRE fee). Therefore, IDRE fees cannot satisfy the injury element of Anthem's claims.

them final and binding.[16]  "[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  Against this backdrop, Anthem's omissions speak loudly.[17]

Anthem's suggestion that it was "required" or "ordered" to pay specific awards is deficient too.  *E.g.*, Am. Compl., R. 25, PageID #133, 159, 161, 172–84.  (Curiously, Anthem's Amended Complaint added more of these "ordered to pay" allegations.)  Being "required" or "ordered" to pay is not the same as actually paying.  This distinction comes into focus once the Court compares these "required" allegations with Anthem's subsequent allegations that it actually "paid" fees.  *See, e.g.*, *id.*, PageID #172–84.  Adding more support, Anthem's prayer for relief curiously demands the Court "[d]eclare that IDR awards issued . . . are not payable on a go-forward basis[.]"  *Id.*, PageID #203.  Such relief would be unnecessary had Anthem bothered to pay its bills.

All of Anthem's claims fail to allege fraud with the required particularity under Rule 9(b).

## D.  The Noerr-Pennington Doctrine Also Bars Anthem's Claims (Counts I–VII, IX–X).

Anthem's claims for monetary and prospective injunctive relief, Counts I through VII, IX, and X, also fail for another reason:  they are barred by the Noerr-Pennington doctrine.  This

---

[16] Kevin B. O'Reilly, *One Wrinkle to Surprise Billing Law? Health Plans Aren't Paying Up*, Am. Med. Ass'n (Aug. 15, 2025), https://www.ama-assn.org/health-care-advocacy/access-care/one-wrinkle-surprise-billing-law-health-plans-aren-t-paying (reporting that "[n]early one in four—24%—of emergency department practice respondents reported that their independent-dispute resolution awards were" not paid in compliance with the No Surprises Act); Americans for Fair Healthcare, *No Surprises Act (NSA) Impact Analysis* 5 (2025), https://www.americansforfairhealthcare.org/surveys (same); Americans for Fair Healthcare, No Surprises Act (NSA) Impact Analysis 4 (2023), https://www.americansforfairhealthcare.org/surveys (reporting that "52% of payments determined by IDREs were not made at all (zero payments)" by insurers in 2022); *see New England Health Care*, 336 F.3d at 501 (permitting the Court to take judicial notice of certain public facts).

24

longstanding First Amendment doctrine safeguards the right to petition. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669–70 (1965). It provides immunity for petitioning activity—including for filings to agencies and courts. *See BE & K Const. Co. v. NLRB*, 536 U.S. 516, 530 (2002); *VIBO Corp. v. Conway*, 669 F.3d 675, 684 (6th Cir. 2012). The doctrine also protects against any claim based on that petitioning, including civil RICO claims and state tort claims. *See, e.g.*, *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007).

Here, the Noerr-Pennington doctrine shields the Providers' petitioning through the IDR process. To start, the IDR process is a government-established adjudication before a neutral decisionmaker. 42 U.S.C. § 300gg-111(c). So the IDR procedure has the character of an agency adjudication. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502, 506–07 (1988). Next, the same core allegations regarding IDR misrepresentations animate each of Anthem's claims. Thus, Noerr-Pennington gives the Providers presumptive immunity against Anthem's claims. *See Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691, 711 (E.D. Mich. 2022) (extending Noerr-Pennington to all claims with "the same essential factual allegations").

No exception to this longstanding doctrine applies. While courts have recognized an "extraordinarily narrow" exception for sham petitioning, that does not save Anthem's claims. *U.S. Futures Exch., L.LC. v. Bd. of Trade of the City of Chic., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020); *see Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 659 (6th Cir. 2004). Sham petitioning occurs when "parties use the petitioning process, rather than the outcome of that process, as [a] weapon." *Knology*, 393 F.3d at 658. So a defendant loses immunity if his petition is "not genuinely aimed at procuring favorable government action at all[.]" *Id.* For sham adjudications, the key inquiry is whether the petitioning "is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro'l Real Est. Invs., Inc. v. Columbia*

*Pictures Indus.*, 508 U.S. 49, 60 (1993) (*PRE*). Critically, a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Id.* at 60 n.5. And a rebuttable presumption counsels against the sham exception when the prior "lawsuit raise[d] a legal issue of genuine substance[.]" *Westmac, Inc. v. Smith*, 797 F.2d 313, 318 (6th Cir. 1986). Anthem bears the burden to show that a Noerr-Pennington exception applies. *Id.*

Given this combined burden and presumption, it is unsurprising that "[c]ourts in the Sixth Circuit have routinely dismissed claims under the Noerr-Pennington doctrine for failure to adequately plead the sham litigation exception." *Ashley Furniture Indus. v. Am. Signature, Inc.*, 2015 WL 12999664, at *4 (S.D. Ohio Mar. 12, 2015) (collecting cases).

Noerr-Pennington mandates dismissal here. Anthem has neither met its burden nor rebutted the presumption to plausibly allege that the "extraordinarily narrow" sham exception applies. *U.S. Futures*, 953 F.3d at 963. It does not, and cannot, plausibly allege that the IDR proceedings were "not genuinely aimed at procuring favorable government action[.]" *Knology*, 393 F.3d at 659. Nor has Anthem plausibly alleged that "no reasonable litigant could realistically expect success" in the IDR proceedings. *PRE*, 508 U.S. at 60. Just the opposite. Anthem openly admits that HaloMD and the Providers *consistently prevailed*. Am. Compl., R. 25, PageID #160—61. "A winning [IDR proceeding] is by definition a reasonable effort at petitioning for redress and therefore not a sham." *PRE*, 508 U.S. at 60 n.5. And to the extent Anthem contests whether some of the claims were *eligible*, Anthem forgets that it had the relevant information for contesting eligibility—and the obligation to contest it. Yet the IDREs' awards necessarily meant that they found eligibility on the information provided to them.

Anthem's supposed "wire fraud" examples only further prove why this Court should dismiss Anthem's claims. *See* Am. Compl., R. 25, PageID #172–84. In each, Anthem supposedly

had an objection to eligibility. Yet in each, IDREs found eligibility satisfied and ruled for HaloMD and the Providers. So "by [Anthem's] own admission, [the Providers] petitioned for a specific outcome from the government and succeeded; *this is the precise situation that falls outside of the sham exception*." *VIBO*, 669 F.3d at 686 (emphasis added).

This Court should follow the path of another Sixth Circuit district court's recent decision. In *EQMD, Inc. v. Farm Bureau Gen. Ins. Co.*, following state-court disputes over medical bills, a company brought a civil RICO claim against insurers. 2021 WL 843145 at *1–2 (E.D. Mich. Mar. 5, 2021). The company alleged that the insurers had fraudulently misrepresented in those state actions that the company operated as an unlicensed pharmacy. *Id.* The insurers moved to dismiss, citing Noerr-Pennington. *Id.* at *4. The court agreed. *Id.* at *8. After finding that Noerr-Pennington applied, the court held that the company had not satisfied a sham exception. *Id.* at *5– 8. The insurers' state-court suits were not "objectively baseless[.]" *Id.* at *6. Rather, the company "negate[d]" any such showing by admitting the insurers "have enjoyed repeated success" in court. *Id.* Indeed, "[t]he very premise of [the company's] complaint [was] that it has been wronged due to this repeated success." *Id.* The court dismissed.

This Court should conclude the same and dismiss Counts I through VII, IX, and X. As in *EQMD*, Anthem's complaint does not allege facts to support an exception to Noerr-Pennington immunity. Anthem's allegations instead "negate[] such a showing by acknowledging that" HaloMD and the Providers "have enjoyed repeated success in" IDR proceedings. *Id.* "The very premise of [Anthem's] complaint is that it has been wronged due to this repeated success." *Id.*

### E. Anthem Has Not Plausibly Alleged Civil RICO Claims Against The Providers (Counts I and II).

Even beyond these fatal flaws, Anthem has failed to plausibly allege either civil RICO claim, Counts I and II, on additional grounds. To plead a civil RICO claim, "a plaintiff must allege

(1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022). Anthem predicates its claim on wire fraud. Am. Compl., R. 25, PageID #184–88.

Anthem's civil RICO claim falls short for at least three reasons. First, Anthem's RICO wire fraud allegations suffer the Rule 9(b) pleading defects described above. *Supra* Part C.

Second, litigation activities, like IDR proceedings, cannot give rise to a civil RICO claim absent corruption. *Kim v. Kimm*, 884 F.3d 98, 104–05 (2d Cir. 2018) (collecting cases). Otherwise, a plaintiff could just call a defendant's prior suit "fraudulent" and then "relitigate [the] entire case in federal court[.]" *Id.* "The RICO statute obviously was not meant to endorse any such occurrence." *Id.* Here, Anthem tells us that the Providers' fraud scheme entailed false IDR submissions. IDR arbitrations are government-sponsored adjudications before neutral decisionmakers, meaning Anthem effectively bases its civil RICO claim on supposedly fraudulent litigation activities. But "the overwhelming weight of authority" rejects this approach. *Pompy v. Moore*, 2024 WL 845859, at *15–16 (E.D. Mich. Feb. 28, 2024). Anthem makes no allegation that IDREs have succumbed to corruption.

The point is further emphasized by considering how Anthem's position would apply had its repeated losses occurred in state court, rather than arbitration. If the Providers had brought multiple lawsuits in state court against Anthem over underpayments for which Anthem suspected the court lacked jurisdiction, and Anthem either failed to raise jurisdictional arguments in those state proceedings or did raise them and repeatedly lost, could Anthem thereafter skip over to federal court and bring a civil RICO case against the Providers to re-litigate the state courts' determinations regarding their own jurisdiction? Surely not.

In fact, under Anthem's ambitious theory, Anthem itself committed predicate RICO acts. Anthem's initial Complaint contained multiple verifiable and material misrepresentations, each intended to influence this litigation in Anthem's favor. Following a letter reminding Anthem of its Rule 11 obligations, Anthem removed many of the verifiable misrepresentations in its subsequent Amended Complaint.[18] This is a "pattern"—Anthem was forced to withdraw similar misrepresentations in its related Georgia litigation. *See* Mot. to Dismiss, *Blue Cross Blue Shield Healthcare Plan of Ga., Inc. v. HaloMD, Inc.*, No. 1:25-cv-02919, Doc. 45-1 at 40–42 (N.D. Ga. Sept. 19, 2025). Anthem's position here, then, would prove far too much.

Third, Anthem has not plausibly alleged that the Providers directed the enterprise. For civil RICO claims, the defendant must take "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This can include "by making decisions on behalf of the enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). But Anthem nowhere alleges, let alone alleges with the required particularity, that the Providers made decisions or took any steps to carry them out. *See supra* Part C.1.

Finally, Anthem's civil RICO conspiracy claim does not even address that claim's unique elements and should be dismissed for the same reasons as Anthem's civil RICO claim. *See Taborac v. NiSource, Inc.*, 2011 WL 5025214, at *9 (S.D. Ohio Oct. 21, 2011) ("Where, as here, the substantive RICO count fails to state a claim, the conspiracy claim fails, too[.]").

---

[18] For example, Anthem removed an entire "wire fraud" example when confronted with incontrovertible evidence that Anthem believed the dispute was eligible during the IDR proceedings. Compl., R. 1, ¶¶ 159–61. Anthem also removed allegations that HaloMD did not initiate IDR proceedings in a timely manner after Defendants provided plain evidence that Anthem's allegations were demonstrably false. *See id.*, ¶¶ 152–53. And Anthem took out claims that HaloMD and the Providers failed to engage in open negotiations. *See id.*, ¶¶ 164–65, 177. These withdrawn allegations were fully within Anthem's knowledge and control *before* filing the Complaint. It is peculiar that Anthem seemingly withheld eligibility data from IDREs yet now misrepresents eligibility data to this Court.

**F. Anthem Has Not Plausibly Alleged A Claim To Vacate The IDR Awards En Masse (Count VIII).**

Anthem likewise fails to plausibly allege a claim for vacatur in Count VIII. The No Surprises Act's exclusive remedy of vacatur expressly incorporates the Federal Arbitration Act's standards. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a)(1)–(4); *Guardian Flight II*, 140 F.4th at 620. This Court thus lacks jurisdiction to review a challenge to (and potentially vacate) these awards in any other way. *See Guardian Flight II*, 140 F.4th at 620; *supra* Part A. So Anthem's vacatur request must satisfy 9 U.S.C. § 10(a)'s rigorous requirements—the exclusive basis for vacating an IDR award. Anthem tries to satisfy this standard in two ways. Both fail.

Anthem first contends that the awards should be vacated for fraud or undue means. Am. Compl., R.25, PageID #200; 9 U.S.C. § 10(a)(1). That standard requires plaintiffs to "demonstrate (1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." *Int'l Bhd. of Teamsters, Local 519 v. UPS*, 335 F.3d 497, 503 (6th Cir. 2003); *Bauer v. Carty & Co.*, 246 F. App'x 375, 377 (6th Cir. 2007) (noting same test applies to vacatur for undue means).

Anthem's allegations fall short, again. *Supra* Part C. Anthem *admits* it "discover[ed] the fraud during" the IDR proceedings. *Local 519*, 335 F.3d at 503. *See* Am. Compl., R. 25, PageID #147–48, 155–56, 159, 172–84. In fact, Anthem "directly notifie[d] [the Providers] that the items or services at issue in their IDR initiation" were ineligible. *Id.*, PageID #155. Anthem's supposed "wire fraud" examples only further prove its knowledge. *See id.*, PageID #172–84. It thus cannot show "due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." *Local 519*, 335 F.3d at 303.

Anthem also suggests that the IDREs exceeded their authority under 9 U.S.C. § 10(a)(4).

Am. Compl., R. 25, PageID #200. "The burden of proving that the arbitrators exceeded their authority is great." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 650 (6th Cir. 2005). The inquiry concerns arbitrability—whether an issue is "within the scope of" issues the arbitrator may decide. *Id.* It is not simply whether the arbitrator decided those questions correctly. *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006). Here, Congress unquestionably gave IDREs authority to make eligibility and payment determinations.

But there is more. Anthem must individually and particularly allege the error infecting *each* challenged award under Rule 9(b). *See Marlar*, 525 F.3d at 444. Instead, Anthem seeks a blanket vacatur of "thousands" of IDR awards since January 2024. Am. Compl., R. 25, PageID #133. Anthem does not even bother to set a number to the challenged awards, let alone identify each award and the supposed error that affected each individual proceeding. Anthem cannot plead vacatur en masse through generalized fraud-scheme allegations—particularly where Anthem contends the specific acts of fraud varied across IDR awards.

### G. Anthem Cannot Bring An ERISA Claim To Challenge IDR Proceedings (Counts IX and X).

Nor can Anthem use ERISA, Counts IX and X, to evade the No Surprises Act's limits on judicial review. The ERISA provisions that Anthem's complaint invokes, found in § 1185e, are the provisions added by the No Surprises Act. *See Tex. Med. Ass'n v. HHS*, 110 F.4th 762, 768 n.6 (5th Cir. 2024); 29 U.S.C. § 1185e. But the Act limits judicial review of IDR determinations solely to vacatur under the Federal Arbitration Act. *Supra* Part A. And it is common "statutory construction that the specific governs the general[.]" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Congress's choice to expressly limit judicial review in the No Surprises Act confirms it did not intend to allow such review via other generalized provisions in the NSA (adding to ERISA). Anthem thus cannot use ERISA's general cause of action to override the Act's specific

31

limits on review.

### H. The Court Should Dismiss Anthem's State Claims (Counts III–VII and X).

Anthem also has not plausibly alleged the state claims, Counts III through VII and X. To start, Anthem's state claims suffer the defects already discussed. *Supra* Parts A–D. Anthem's state claims suffer individual flaws as well, though.

First, Anthem's OCAA claim (Count III) has the same defects as the civil RICO claim. *Supra* Part E. In addition, Anthem must allege that the "corrupt activity" "include[s] at least one" criminal act *not* indictable as federal mail and wire fraud. Ohio Rev. Code § 2923.34(A); *see Rahimi v. St. Elizabeth Med. Ctr.*, 1997 WL 33426269, at *2 & n.1 (S.D. Ohio July 16, 1997). Anthem has not done so. At most, Anthem theorizes supposed "telecommunications fraud" under Ohio Rev. Code § 2913.05. But under Ohio law, that's still "wire fraud." *See* 88 Ohio Jur. 3d, *Telecommunication fraud (wire fraud)* § 76. Anthem has not plausibly alleged this claim.

Second, Anthem's ODTPA claim (Count VI) likewise fails. There, "the ultimate question is generally whether a defendant[']s actions are likely to confuse customers as to the origin of the goods offered by the parties." *Mulch Mfg. v. Advanced Polymer Sols.*, 947 F. Supp. 2d 841, 865 (S.D. Ohio 2013) (citation modified); *see Torrance v. Rom*, 157 N.E.3d 172, 188 (Ohio Ct. App. 2020) ("the deception is material in that it is likely to influence a purchasing decision"). Fatal to this claim, Anthem does not even try to allege that the Providers confused consumers.

### I. This Court Lacks Personal Jurisdiction Over MPowerHealth (Counts I–X).

Furthermore, even beyond all of the other bases that doom Anthem's claims against all the Provider Defendants, this Court also lacks personal jurisdiction over MPowerHealth specifically. Federal courts exercise the same personal jurisdiction as the courts of their forum state, here Ohio. Fed. R. Civ. P. 4(k). Personal jurisdiction comes in two varieties: general and specific. General jurisdiction exists where the defendant has "continuous and systematic"

32

interactions with the forum state. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). Specific jurisdiction exists "in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Id.* To adequately plead personal jurisdiction, the plaintiff must plead "with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020).

Anthem does not allege that MPowerHealth is incorporated or headquartered in Ohio, or has any continuous and systemic contacts with Ohio, meaning this Court lacks general jurisdiction over MPowerHealth. As for specific jurisdiction, Anthem at most alleges that MPowerHealth controls purported "subsidiaries" that operate in Ohio and which submitted IDR disputes. Am. Compl., R. 25, PageID #132, 165–66. But Anthem does not allege that MPowerHealth itself participated in its subsidiaries' medical procedures in Ohio or in their IDR disputes in Ohio. Tellingly, Anthem's "wire fraud" examples barely even mention MPowerHealth, at most merely suggesting that certain communications *copied* MPowerHealth employees. *Id.*, PageID #172–84.

If Anthem wants to drag MPowerHealth into this forum, then, Anthem must demonstrate that MPowerHealth's "control" over any purported Ohio subsidiaries alone gives rise to personal jurisdiction. Anthem cannot. Courts do not have personal jurisdiction over a parent company simply because it has personal jurisdiction over the parent's subsidiary company. Instead, the Sixth Circuit has made clear that "a non-resident parent corporation" who, like MPowerHealth here, is not alleged to have individually acted within the state and given rise to the cause of action "is amenable to suit in the forum state" only where "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Est. of Thomson ex rel. Rakestraw v. Toyota Motor Corp. Worldwide*,

33

545 F.3d 357, 362 (6th Cir. 2008). That means veil piercing, which is only appropriate in "extraordinary cases." *Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d 803, 820 (S.D. Ohio 2023). At a minimum, the plaintiff seeking to extend jurisdiction over a subsidiary to an out-of-state parent company must demonstrate "financial dependency between corporations" and "nonobservance of corporate formalities." *Id.* at 821.

Anthem's Amended Complaint does not even plead an alter ego theory. That alone warrants dismissal. *See id.* at 820–81.

Nor has Anthem alleged anything that could support a viable theory. *See id.* Anthem does not allege MPowerHealth disregarded corporate formalities like separate recordkeeping, financial statements, or tax filings. *See id.* Anthem does not allege that any of MPowerHealth's purported subsidiaries are not financially independent or have the same financial assets. *See id.* Anthem does not allege that MPowerHealth exerts direct and daily control over its subsidiaries' operations. *See id.* True, Anthem alleges that certain MPowerHealth employees also have roles at certain subsidiaries and that certain subsidiaries share a mailing address with MPowerHealth. *See, e.g.*, Am. Compl., R. 25, PageID #165–67. But these breadcrumbs are insufficient to plead an "extraordinary" alter ego theory. *Arnold*, 681 F. Supp. 3d at 820–21 ("[I]t is entirely appropriate for directors and officers of a parent corporation to serve as directors and officers of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." (citation modified)). This Court thus lacks personal jurisdiction over MPowerHealth.[19]

---

[19] To the extent Anthem asserts personal jurisdiction against MPower under civil RICO's and ERISA's nationwide-service-of-process provisions, those claims fail for the reasons discussed above and thus cannot serve as a basis for personal jurisdiction, *see supra* Parts E and G. In addition, personal jurisdiction over an out-of-state MPowerHealth does not serve the "ends of justice" for civil RICO because the allegations do not concern any Ohio-related actions by it. 18 U.S.C. § 1965(b).

### J. Ohio's Anti-Slapp Statute Entitles The Providers To Their Reasonable Attorneys' Fees.

Finally, in addition to dismissal, the Providers respectfully submit that they are entitled to their attorneys' fees pursuant to Ohio's Anti-Slapp statute. Ohio Rev. Code § 2747.01 *et seq*. "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state[.]" *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Federal courts apply state-law fee shifting statutes that embody a state's substantive policy to state-law claims. *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 533 (6th Cir. 2008). As a result, federal courts often award fees under state Anti-Slapp statutes. *See, e.g.*, *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 184–89 (S.D.N.Y. 2024); *Minnix v. Sinclair Television Grp.*, 2023 WL 3570955, at *7–8 (W.D. Va. May 19, 2023).

Ohio's Anti-Slapp statute applies to Anthem's state claims because it bases its claims on "communication[s] in"—and "communication[s] on an issue under consideration or review in"—a "judicial, administrative, or other governmental proceeding." Ohio Rev. Code § 2747.01(B)–(C); *see id.* § 2747.04(C)(1)–(2). Because Anthem has "failed to state . . . cause[s] of action upon which relief can be granted," *id.* § 2747.04(C)(3)(a), Ohio law entitles the Providers to their reasonable attorneys' fees, *id.* § 2747.05(A) ("[T]he court *shall award* reasonable attorney's fees, court costs, and other reasonable litigation expenses to the moving party." (emphasis added)).

### CONCLUSION

For all the foregoing reasons, this Court should dismiss all claims against the Providers with prejudice and award fees and costs.

Dated: November 10, 2025                                    JONES DAY

By:/s/ Michael R. Gladman
    Michael R. Gladman, Ohio Bar No. 59797
    mgladman@jonesday.com
    Trial Attorney
    325 John H. McConnell Boulevard
    Suite 600
    Columbus, OH  43215.2792
    Telephone:  +1.614.469.3939
    Facsimile:  +1.614.461.4198

    Justin E. Herdman, Ohio Bar No. 80418
    jherdman@jonesday.com
    Samuel V. Lioi, Ohio Bar No. 100464
    slioi@jonesday.com
    North Point
    901 Lakeside Avenue
    Cleveland, OH 44114.1190
    Telephone:  +1.216.586.7113
    Facsimile:  +1.216.579.0212

    B. Kurt Copper, Ohio Bar No. 0082563
    bkcopper@jonesday.com
    2727 North Harwood Street
    Suite 500
    Dallas, TX 75201.1515
    Telephone:  +1.214.969.5163
    Facsimile:  +1.214.969.5100

    Attorneys for Defendants MPowerHealth
    Practice Management, LLC, Evokes, LLC,
    Midwest Neurology, LLC, One Care
    Monitoring, LLC, and Value Monitoring
    LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 10, 2025, a true and accurate copy of the foregoing was filed through the Court's CM/ECF system and will be sent electronically to the registered participants.

*/s/ Michael R. Gladman*
Michael R. Gladman
