UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| COMMUNITY INSURANCE COMPANY dba ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>        Plaintiff,<br><br>    v.<br><br>HALOMD, LLC, ALLA LAROQUE, SCOTT LAROQUE, MPOWERHEALTH PRACTICE MANAGEMENT, LLC, EVOKES, LLC, MIDWEST NEUROLOGY, LLC, ONE CARE MONITORING, LLC, and VALUE MONITORING LLC,<br><br>        Defendants. | Civil Case No.  1:25-cv-00388-MWM<br><br>District Judge:  Matthew W. McFarland |

**DEFENDANT HALOMD'S MOTION TO DISMISS
ANTHEM'S AMENDED COMPLAINT**

**SUMMARY OF HALOMD'S PRINCIPAL ARGUMENTS AND PRIMARY
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield's ("Anthem's") Amended Complaint fails to plead a plausible claim (with or without particularity) against HaloMD, LLC ("HaloMD") in satisfaction of Fed. R. Civ. P. 8 and 9(b). Each of Anthem's claims must therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. Dismissal is independently warranted pursuant to Fed. R. Civ. P. 12(b)(1) and (2) because Anthem does not establish that this Court has subject-matter jurisdiction over Anthem's claims, or that this Court has personal jurisdiction over HaloMD. Specifically, this Court should dismiss Anthem's Amended Complaint in its entirety with prejudice for the following reasons:

First, in the No Surprises Act ("NSA"), Congress expressly barred judicial review of Independent Dispute Resolution ("IDR") process determinations except for the narrow vacatur grounds incorporated from the Federal Arbitration Act ("FAA"). 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10. Every claim asserted by Anthem is an impermissible collateral attack on IDR awards issued by certified Independent Dispute Resolution Entities ("IDREs"), and Anthem has not sufficiently pleaded a basis for vacatur of any IDR award. *See infra.*, pp. 22-23, 41-42; *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211–12 (6th Cir. 1982); *In re Robinson*, 326 F.3d 767, 771 (6th Cir. 2003); *Decker v. Merrill Lynch*, 205 F.3d 906, 908 (6th Cir. 2000).

Second, even if judicial review were available, Anthem is precluded from relitigating IDR eligibility under collateral estoppel principles, as IDREs necessarily decide eligibility before issuing final payment determinations. *See infra.*, p. 23-25; *Bills v. Aseltine*, 52 F.3d 596, 604 (6th Cir. 1995); *B & B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138 (2015); *Amerisure Mut. Ins. Co. v. Swiss Reinsurance Am. Corp.*, No. 24-1492, 2025 WL 3094132 (6th Cir. Nov. 4, 2025).

Third, Anthem's claims are barred by the *Noerr-Pennington* doctrine, which immunizes parties from liability for core petitioning activity protected by the First Amendment. Initiating IDR proceedings amounts to core petitioning activity, and HaloMD's IDR process initiations are not objectively baseless nor subject to the *Noerr-Pennington* "sham" exception, as Anthem acknowledges that HaloMD prevails in a substantial share of IDR disputes. *See infra.*, pp. 25-27; *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972); *VIBO Corp. v. Conway*, 669 F.3d 675, 683–86 (6th Cir. 2012); *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000).

Fourth, Anthem does not have standing as it does not allege an injury traceable to HaloMD. *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 485–86 (6th Cir. 2022). *See infra.*, pp. 27-28.

Fifth, the Court lacks personal jurisdiction because Anthem's Racketeer Influenced and Corrupt Organizations Act ("RICO") and Employee Retirement Income Security Act of 1974 ("ERISA") claims fail, and RICO's "ends of justice" requirement under 18 U.S.C. § 1965(b) is otherwise unsatisfied. *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 524 (6th Cir. 2000); *Bon Secours Mercy Health, Inc. v. DevonMD, LLC*, No. 1:20-CV-919, 2025 WL 676446, at *10 (S.D. Ohio Mar. 3, 2025). *See infra.*, pp. 28-30.

Sixth, Anthem's RICO counts fail because Anthem cannot plead proximate cause; litigation conduct cannot serve as a predicate act; and Anthem has not alleged a distinct enterprise or a pattern of racketeering activity. Since Anthem's substantive RICO claim fails, Anthem's derivative RICO-conspiracy claim similarly collapses. *See infra.*, pp. 30-35; *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548 (6th Cir. 2022); *Kim v. Kimm*, 884 F.3d 98, 104–05 (2d Cir. 2018); *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995); *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000).

Seventh, Anthem's state law claims fail for the same reasons.  *See infra.*, pp. 35-36.  Ohio's Corrupt Activity Act ("Ohio RICO") mirrors federal RICO and requires at least one non-mail/wire predicate, which is absent.  Ohio Rev. Code § 2923.32; *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013).  Anthem's remaining state law claims—including theft by deception, civil conspiracy, violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), and common-law fraud—all lack the requisite elements.  *See infra.*, pp. 36-41; Ohio Rev. Code § 2307.60; *Burgess v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013); Ohio Rev. Code § 4165.04; *Abira Med. Lab'ys, LLC v. CareSource*, No. 3:24-CV-157, 2024 WL 4817444, at *3 (S.D. Ohio Nov. 18, 2024).

Eighth, Anthem's ERISA claim fails, as Anthem has not alleged that it is a fiduciary.  Further, 29 U.S.C. § 1185e does not create the violations that Anthem seeks to enjoin.  29 U.S.C. § 1132(a)(3); *Briscoe v. Fine*, 444 F.3d 478, 485-88 (6th Cir. 2006).  *See infra.*, pp. 42-44.

Ninth, Anthem's claim for declaratory and injunctive relief is improper, as Anthem has not stated a plausible underlying substantive claim.  Nor has Anthem sufficiently demonstrated why the Court should exercise its discretionary authority to issue a declaration with respect to the NSA's IDR process.  *See infra.*, pp. 44-45; *Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp. 2d 583, 592-93 (N.D. Ohio 2004); *Novel v. New York*, No. 2:13-CV-698, 2014 WL 5858874, at *2 (S.D. Ohio Nov. 12, 2014).

Finally, an award of attorneys' fees to HaloMD is warranted under Ohio's Uniform Public Expression Protection Act ("UPEPA") because Anthem's state law claims target protected communications in a governmental proceeding.  *See infra.*, pp. 45-46; Ohio Rev. Code § 2747.05(A).

# TABLE OF CONTENTS

**Page**

I.      Introduction ..................................................................................................12

II.     The Genesis of the No Surprises Act. ...........................................................12

III.    Anthem's Agenda ...........................................................................................14

IV.     Anthem Does Not Allege a Basis for Liability ..............................................15

V.      IDREs Evaluate and Resolve Eligibility Disputes .........................................18

VI.     Anthem Cannot Artfully Plead around the No Surprises Act's Judicial Review Prohibition and the Federal Arbitration Act. .....................................................22

VII.    Anthem is Precluded from Relitigating Eligibility ........................................23

VIII.   Anthem's Claims Are Barred by the *Noerr-Pennington* Doctrine. ..................25

IX.     Anthem Has Not Alleged an Injury Traceable to HaloMD ............................27

X.      The Court Has No Personal Jurisdiction over HaloMD. .................................28

XI.     Anthem's Amended Complaint Fails to State a Claim (with or without Particularity). ....30

    1.      Count I: Anthem's RICO Claim Fails. ...................................................30

        A.      Anthem Does Not Allege that HaloMD Proximately Caused Damage to Anthem. ...........30

        B.      Anthem Fails to Plausibly Plead with Particularity that HaloMD Engaged in a Pattern of Racketeering Activity. ...........................32

            i.      Litigation Activities are Not Predicate Racketeering Acts. ...........32

            ii.     Anthem Fails to Allege Two Predicate Racketeering Acts. ...........32

            iii.    Anthem's Wire Fraud Allegations Lack Particularity. ..................33

            iv.     Anthem Fails to Allege a Distinct RICO Enterprise. .....................34

    2.      Count II: Anthem's RICO's Conspiracy Claim Fails. ...............................35

    3.      Count III: Anthem's Ohio Corrupt Activity Act Claim Fails. ...............................35

    4.      Count IV: Anthem's Theft by Deception Claim Fails. ...........................36

    5.      Count V: Anthem's Civil Conspiracy Claim Fails. .................................37

    6.      Count VI: Anthem's Ohio Deceptive Trade Practices Act Claim Fails. ................39

    7.      Count VII: Anthem's Fraudulent Misrepresentation Claim Fails. .........................40

    8.      Count XIII: Anthem's Vacatur Claim Fails. ...........................................41

    9.      Claim IX: Anthem's ERISA Claim Fails. ..............................................43

    10.     Count X: Anthem's Claim for Declaratory and Injunctive Relief is Improper. .....44

XII.    HaloMD Is Entitled to Recover Its Fees Under Ohio's Uniform Public Expression Protection Act. .................................................................45

XIII.   Conclusion ...................................................................................................46

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Abira Med. Lab'ys, LLC v. CareSource*,
    No. 3:24-CV-157, 2024 WL 4817444 (S.D. Ohio Nov. 18, 2024) ................................4, 40

*Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*,
    768 F.App'x 446 (6th Cir. 2019) .............................................................................35

*Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*,
    219 F.3d 519 (6th Cir. 2000) .................................................................................37

*Amadasu v. The Christ Hosp.*,
    514 F.3d 504 (6th Cir. 2008) .................................................................................38

*Amerisure Mut. Ins. Co. v. Swiss Reinsurance Am. Corp.*,
    No. 24-1492, 2025 WL 3094132 (6th Cir. Nov. 4, 2025) ................................2, 24

*Anthem Blue Cross Life and Health Ins. Co., et al. v. HaloMD, LLC, et al.*,
    No. 8:25-cv-01467-KES (C.D. Cal.) .......................................................................15

*Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*,
    No. 2:11-CV-427, 2015 WL 12999664 (S.D. Ohio Mar. 12, 2015).......................26

*B & B Hardware, Inc. v. Hargis Indus.*,
    575 U.S. 138 (2015)...........................................................................................2, 24

*Barcume v. City of Flint*,
    132 F. Supp. 2d 549 (E.D. Mich. 2001).................................................................42

*Baxter v. C.A. Muer Corp.*,
    941 F.2d 451 (6th Cir. 1991) .................................................................................43

*Begala v. PNC Bank, Ohio, Nat. Ass'n*,
    214 F.3d 776 (6th Cir. 2000) .............................................................................3, 34

*Bills v. Aseltine*,
    52 F.3d 596 (6th Cir. 1995) ...............................................................................2, 24

*In re: Blue Cross Blue Shield Antitrust Litigation*,
    Case No. 2:13-cv-20000 (N.D. Ala.) ......................................................................16

*Blue Cross Blue Shield Healthcare Plan of Ga., Inc. v. HaloMD, LLC, et al.*,
    No. 1:25-cv-02919-TWT (N.D. Ga.).......................................................................15

*Bobulinski v. Tarlov*,
    758 F. Supp. 3 d 166, 184–89 (S.D.N.Y. 2024) (New York) ..................................45

*Bon Secours Mercy Health, Inc. v. DevonMD, LLC*,
    No. 1:20-CV-919, 2025 WL 676446 (S.D. Ohio Mar. 3, 2025)........................................3, 29

*Bowles v. Whitmer*,
    120 F.4th 1304 (6th Cir. 2024) ...............................................................................27

*Briscoe v. Fine*,
    444 F.3d 478 (6th Cir. 2006) ..............................................................................4, 43

*Burgess v. Fischer*,
    735 F.3d 462 (6th Cir. 2013) ..............................................................................4, 38

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)............................................................................................3, 25

*Columbia Nat. Res., Inc. v. Tatum*,
    58 F.3d 1101 (6th Cir. 1995) ..............................................................................3, 33

*Corey v. N.Y. Stock Exch.*,
    691 F.2d 1205 (6th Cir. 1982) .....................................................................2, 22, 23

*Days Inn Worldwide, Inc. v. Sai Baba, Inc.*,
    300 F. Supp. 2d 583 (N.D. Ohio 2004)..............................................................4, 44

*Decker v. Merrill Lynch*,
    205 F.3d 906 (6th Cir. 2000) ..............................................................................2, 23

*EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Michigan*,
    No. 19-13698, 2021 WL 843145 (E.D. Mich. Mar. 5, 2021) .................................26

*Fyda Freightliner Cincinnati, Inc. v. Daimler Vans USA LLC*,
    No. 2:21-CV-5077, 2022 WL 2073394 (S.D. Ohio June 9, 2022)..........................24

*Gable v. Lewis*,
    201 F.3d 769 (6th Cir. 2000) ..............................................................................3, 26

*Gen. Motors, LLC v. FCA US, LLC*,
    44 F.4th 548 (6th Cir. 2022) ...............................................................................3, 30

*Geomatrix, LLC v. NSF Int'l*,
    629 F. Supp. 3d 691 (E.D. Mich. 2022), *aff'd*, 82 F.4th 466 (6th Cir. 2023)..........26

*Grow Mich., LLC v. LT Lender, LLC*,
    50 F.4th 587 (6th Cir. 2022) ...........................................................................30, 31

*Growella, Inc. v. Ganz*,
    No. 1:23-CV-832, 2024 WL 3823430 (S.D. Ohio Aug. 14, 2024) ........................28

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
140 F.4th 271 (5th Cir. 2025) ..................................................................22

*Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*,
140 F.4th 613 (5th Cir. 2025) .............................................................22, 25

*Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*,
512 F.3d 742 (5th Cir. 2008) ..................................................................23

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
668 F.3d 393 (6th Cir. 2012) ..................................................................31

*Int'l Bhd. of Teamsters, Loc. 519 v. United Parcel Serv., Inc.*,
335 F.3d 497 (6th Cir. 2003) ..................................................................42

*Kaplan v. Univ. of Louisville*,
10 F.4th 569 (6th Cir. 2021) ..................................................................44

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018)................................................................3, 32

*Michelson v. Volkswagen Aktiengesellschaft*,
99 N.E.3d 475 (Ohio Ct. App. 2018 ) ....................................................39

*Minnix v. Sinclair Television Grp.*,
No. 7:23-cv-091, 2023 WL 3570955 (W.D. Va. May 19, 2023)...........45

*Modern Orthopaedics of NJ v. Premera Blue Cross*,
No. 2:25-CV-01087 (BRM) (JSA), 2025 WL 3063648 (D.N.J. Nov. 3, 2025) .....................22

*United States ex rel Montcrief v. Peripheral Vascular Assocs., P.A.*,
133 F.4th 395 (5th Cir. 2025) ..................................................................18

*NGS Am., Inc. v. Jefferson*,
218 F.3d 519 (6th Cir. 2000) ..............................................................3, 29

*NOCO Co. v. OJ Com., LLC*,
35 F.4th 475 (6th Cir. 2022) ........................................................3, 28, 31

*Novel v. New York*,
No. 2:13-CV-698, 2014 WL 5858874 (S.D. Ohio Nov. 12, 2014) ....................4, 45

*Ogle v. BAC Home Loans Servicing LP*,
924 F. Supp. 2d 902 (S.D. Ohio 2013) ........................................4, 35, 38

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025) (New Jersey)..........................................45

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)................................................................................................27

*Pub. Affs. Assocs., Inc. v. Rickover*,
    369 U.S. 111 (1962)..............................................................................................45

*Rahimi v. St. Elizabeth Med. Ctr.*,
    No. C3-96-126, 1997 WL 33426269 (S.D. Ohio July 16, 1997)..........................36

*In re Robinson*,
    326 F.3d 767 (6th Cir. 2003) ...........................................................................2, 23

*Smith v. Lerner, Sampson & Rothfuss, L.P.A.*,
    658 F.App'x 268 (6th Cir. 2016) ..........................................................................24

*Taborac v. NiSource, Inc.*,
    No. 2:11-CV-498, 2011 WL 5025214 (S.D. Ohio Oct. 21, 2011) ........................34

*United States v. Robinson*,
    99 F.4th 344 (6th Cir. 2024) ................................................................................33

*VIBO Corp. v. Conway*,
    669 F.3d 675 (6th Cir. 2012) ......................................................................3, 25, 27

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,
    700 F.App'x 484 (6th Cir. 2017) ..........................................................................24

*Worldwide Aircraft Servs. v. Worldwide Ins. Servs., LLC*,
    No. 8:24-CV-840-TPB-CPT, 2024 WL 4226799 (M.D. Fla. Sept. 18, 2024) .......22

**Federal Rules and Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201................................................................44

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ................... *passim*

    29 U.S.C. § 1002................................................................................................43

    29 U.S.C. § 1132(a) .................................................................................... 31, 44-46

    29 U.S.C. § 1132(e) ...........................................................................................31

    29 U.S.C. § 1185(e) ........................................................................................4, 46

Federal Arbitration Act, 9 U.S.C. §§ 1-16............................................................ *passim*

    9 U.S.C. § 10................................................................................................2, 44

False Claims Act, 31 U.S.C. § 3729 *et seq.*................................................................20

No Surprises Act ..................................................................................... *passim*

    42 U.S.C. § 300gg-111(a) ...................................................................15

    42 U.S.C. § 300gg-111(c) ...........................2, 15, 16, 18, 19, 24, 44

    42 U.S.C. § 300gg-131 ......................................................................15

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ...........................17

    18 U.S.C. § 1961 ...............................................................................34

    18 U.S.C. § 1962 ...............................................................................32

    18 U.S.C. § 1964 ...............................................................................32

    18 U.S.C. § 1965 ...........................................................................3, 31

28 U.S.C. § 1332 ......................................................................................31

28 U.S.C. § 1367 ......................................................................................30

Fed. R. Civ. P. 8 ...................................................................................2, 43

Fed. R. Civ. P. 9 ....................................................................35, 36, 42, 43

Fed. R. Civ. P. 12 ...........................................................................2, 14, 17

**Federal Regulations**

45 C.F.R. § 149.510 *et seq* ....................................................................19

45 C.F.R. § 149.510(a) ...........................................................................15

45 C.F.R. § 149.510(b) ...........................................................................20

45 C.F.R. § 149.510(c) ..........................................................21, 23, 26, 33

**Ohio Statutes**

Ohio Corrupt Activity Act, Ohio Rev. Code § 2923.31 *et seq.* .............4, 5, 37

    Ohio Rev. Code § 2923.32 ...............................................................4, 37

Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165 *et seq* ...............4, 41, 42

    Ohio Rev. Code § 4165.02 ...................................................................41

    Ohio Rev. Code § 4165.04 ................................................................4, 41

Ohio Uniform Public Expression Protection Act, Ohio Rev. Code § 2747 *et seq.* .............4, 47, 48

Ohio Rev. Code § 2307.382 ....................................................................................................29

Ohio Rev. Code § 2307.60 .................................................................................................4, 36

Ohio Rev. Code § 2913.01 ....................................................................................................37

Ohio Rev. Code § 2913.02 ....................................................................................................36

Ohio Rev. Code § 2923.34 ....................................................................................................36

**Other Authorities**

Federal Independent Dispute Resolution Operations Notice of Proposed
    Rulemaking, 88 Fed. Reg. 75744, 75759-63 (Nov. 3, 2023)..................................................19

U.S Const. amend. I ..............................................................................................................25

**MEMORANDUM IN SUPPORT OF HALOMD'S MOTION TO DISMISS ANTHEM'S AMENDED COMPAINT**

## I.    Introduction.

In time, Plaintiff Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("Anthem") will be held accountable for its abuse of process. For the moment, this Court should see this case for what it is: an attempt by Anthem, one of the wealthiest organizations in the world, to bury those that reveal its exploits, and in doing so, challenge its power. But Anthem cannot manufacture claims or liability where neither exist.

For the following reasons, this Court should dismiss the entirety of Anthem's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6).[1]

## II.    The Genesis of the No Surprises Act.

This lawsuit is about the No Surprises Act's Independent Dispute Resolution ("IDR") process. But while the IDR process is at the center of this dispute, the genesis of the No Surprises Act ("NSA") is equally important to understanding this case.[2]

In America, healthcare insurance companies like Anthem have tremendous market power. They wield that power to force healthcare providers to accept unfair payments for healthcare services. With Anthem in particular, healthcare providers often face a Hobson's choice—they can either: (i) join Anthem's provider network (*i.e.*, go "in network") and accept Anthem's unfair contractual rates; or (ii) refuse to join Anthem's provider network (*i.e.*, go "out of network"), in which case Anthem and the healthcare provider have no agreement regarding how much Anthem must pay for services provided to patients with healthcare insurance through Anthem.

---

[1] In addition to those arguments set forth in this memorandum, HaloMD joins in all other arguments, as applicable to HaloMD, asserted by its co-Defendants with respect to the defects associated with Anthem's Amended Complaint.
[2] The NSA is a component (Division BB, Title I) of the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 2758 (2020).

In the out-of-network context, the healthcare provider often is only in privity with the patient. Because of this, prior to the passage of the NSA, patients were all too frequently put in the middle of payment disputes between out-of-network healthcare providers and Anthem. If Anthem refused to pay fair rates, the healthcare provider often could only seek recovery from the patient. It was an unfortunate reality for everyone other than Anthem, and especially for patients who incorrectly believed, because they had healthcare insurance through Anthem, that certain healthcare services were in-network and were surprised when they received a bill.

The NSA changed things. The NSA limits patients' financial responsibility for certain out-of-network services that patients often incorrectly believe are in-network: (i) emergency services, (ii) services provided by out-of-network providers at in-network facilities, and (iii) air ambulance services. *See* 42 U.S.C. §§ 300gg-131; 300gg-132; 300gg-135. However, while this limitation resolved the issue of patients receiving surprise bills, Congress recognized that because the NSA limited the amount owed by a patient for certain services, there needed to be an efficient way to resolve disputes regarding the appropriate payment for such services when there was no other controlling authority governing payment.[3] Congress's solution was the IDR process, whereby certified Independent Dispute Resolution Entities ("IDREs") would, according to strict, explicit parameters set by Congress, resolve out-of-network payment disputes. *See generally* 42 U.S.C. § 300gg-111(c). To ensure that the federal judiciary was not overburdened by parties' dissatisfaction with IDRE decisions, Congress explicitly barred judicial review of IDRE determinations, except

---

[3] The NSA provides for resolution of out-of-network payment disputes through the IDR process when a state does not have a "specified State law" that provides for a method of determining the amount to be paid, or if the state does not have an All-Payer Model Agreement (*i.e.*, a healthcare payment system where all payers, including commercial healthcare insurers, agree to pay the same rate for a specific service). *See* 42 U.S.C. § 300gg-111(a)(3)(K) (defining "out-of-network rate"); 45 C.F.R. § 149.510(a)(2)(xi)(A) (defining "Qualified IDR item or service").

in those limited cases for which vacatur was appropriate under the Federal Arbitration Act ("FAA"). *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i).

While Congress recognized that the IDR process was necessary, it underestimated the prevalence—and significance—of the problems associated with the market power imbalance between commercial healthcare insurers and healthcare providers. The IDR process has been a revelation. Providers, often foreclosed from challenging commercial healthcare insurance payments due to the costs and burdens of litigation, now have the means through the IDR process to efficiently contest unfair payment rates for certain services and subject such rates to scrutiny. Further, when IDREs scrutinize commercial healthcare insurance rates, they often determine that many such rates are indefensible.[4]

## III. Anthem's Agenda.

It is not difficult to understand why Anthem is threatened by the IDR process and the equities created by the NSA. Through the IDR process, Anthem may be forced to pay fair rates for certain out-of-network services. But more importantly, if healthcare providers are better positioned to fight unfair rates, they will be less willing to join Anthem's network. This will make it more difficult for Anthem to market and sell its healthcare insurance products. It is bad for Anthem's business.

Given this new reality, one might think that Anthem would offer more reasonable contracted rates to healthcare providers to encourage healthcare providers to go in-network. Or that for those cases proceeding through the IDR process, Anthem would submit more reasonable

---

[4] The NSA requires federal agencies to publish information relating to the IDR process and IDRE determinations. *See* 42 U.S.C § 300gg-111(c)(7). To satisfy this statutory requirement, the Centers for Medicare and Medicaid Services ("CMS") posts reports and public use files ("PUFs"), which contain summary and detailed data submitted by disputing parties and IDREs during the IDR process. As Anthem acknowledges, data provided by CMS shows that, in cases that proceed to a payment determination, IDREs select the provider offer as the more reasonable offer in approximately 85% of disputes. Amend. Compl., ECF No. 25 at PageID 160, ¶ 112.

offers to IDREs.  Not so.  Instead, Anthem has elected to file actions across the country against HaloMD, which contracts with healthcare providers to resolve payment disputes through the IDR process.  All of Anthem's actions lead with alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO"), a federal statute designed to dismantle organized crime syndicates.[5]

The intended effect of this action, and the other actions filed by Anthem, is obvious: impose business-debilitating litigation costs on HaloMD, intimidate healthcare providers, and chill the use of the IDR process while Anthem lobbies Congress and federal agencies to restore its historical power imbalance.

In pursuit of its perverted agenda, Anthem asserts ten separate counts against HaloMD in its Amended Complaint.  For the reasons that follow, each one of these counts fails.

## IV.        Anthem Does Not Allege a Basis for Liability.

Anthem's Amended Complaint largely amounts to an attack on the NSA itself.  However, while Anthem's displeasure with the NSA is not a basis for liability generally, the contentions offered by Anthem are similarly illegitimate bases for all of Anthem's claims.  Anthem's Amended Complaint thus fails to state a plausible claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Anthem offers three factual predicates for its claims against HaloMD.  In reverse order, Anthem alleges that HaloMD is liable because it submitted through the IDR process: (1) improperly inflated offers; (2) massive volumes of disputes; and (3) false and fraudulent

---

[5] In addition to this action, to date, Anthem has filed similar actions against HaloMD and others in Georgia and California.  *See Blue Cross Blue Shield Healthcare Plan of Ga., Inc. v. HaloMD, LLC, et al.*, No. 1:25-cv-02919-TWT (N.D. Ga.); *Anthem Blue Cross Life and Health Ins. Co., et al. v. HaloMD, LLC, et al.*, No. 8:25-cv-01467-KES (C.D. Cal.).

attestations of eligibility.  Amend. Compl., ECF No. 25 at PageID 151-162, ¶¶ 80-121.  None of these contentions are sufficient to support any of Anthem's claims.

First, regarding Anthem's contention that HaloMD's offers are illegally inflated, there is no authority that limits what amount a party may offer in the IDR process.  Rather, the IDR process is designed as a "baseball style" arbitration, whereby the IDRE selects the most reasonable of the two offers submitted by the healthcare insurer and the healthcare provider based on strict criteria set forth by Congress.  *See* 42 U.S.C. § 300gg-111(c)(5)(C).  As Anthem acknowledges, by law, an IDRE may not even consider a healthcare provider's billed charge (*i.e.*, the usual and customary charge) for the service at issue when making a payment determination.  42 U.S.C. § 300gg-111(c)(5)(D); Amend. Compl., ECF No. 25 at PageID 160, ¶ 114.  Presumably, if an IDRE selected HaloMD's offer in a dispute initiated by HaloMD against Anthem, it only selected such offer because it deemed HaloMD's offer more reasonable.  That any such HaloMD offer may have been greater than the charge initially billed is irrelevant and fails to account for, among other things, the increased costs that a healthcare provider incurs because of Anthem's failure to pay a fair rate initially, necessitating the initiation of the IDR process to ensure fair payment.  Anthem's contention is thus an indictment of its own payment practices.  Ironically, Anthem alleges the following in support of its legal contention that HaloMD's offers are unlawfully inflated:

> Indeed, upon information and belief, prior to the enactment of the NSA, [the healthcare provider Defendants] rarely, if ever, recovered their full billed charges from patients or health plans.[6] Amend. Compl., ECF No. 25 at PageID 161, ¶ 117.

It is for this very reason that Congress felt compelled to create the IDR process.

---

[6] Anthem's contention is all the more ironic given that, exactly one month before Anthem filed its Amended Complaint in this action, a U.S. District Court granted final approval of a class action settlement requiring Blue Cross Blue Shield to pay $2.8 billion to resolve antitrust claims based on allegations that Anthem and other Blue Cross Blue Shield licensees underpaid healthcare providers.  This followed a separate recent settlement in which Blue Cross Blue Shield agreed to pay $2.67 billion to resolve allegations that Blue Cross Blue Shield violated antitrust laws in the market for healthcare insurance.  *See In re: Blue Cross Blue Shield Antitrust Litigation*, Case No. 2:13-cv-20000 (N.D. Ala.).  Both settlements contained broad, sweeping injunctive relief.

Second, regarding the alleged volume of IDR process disputes initiated by HaloMD, Anthem offers no authority that limits the number of IDR proceedings that a party may initiate. This is unsurprising, as no such authority exists. Indeed, any limitation would be illogical and otherwise serve as an arbitrary barrier to prevent healthcare providers from accessing the IDR process. Further, both the NSA and associated regulations set forth strict timing requirements for initiating IDR proceedings and provide for the batching of similar disputes in certain circumstances. *See* 42 U.S.C. § 300gg-111(c) (providing the statutory framework for the IDR process, including treatment of batched items and services); 45 C.F.R. § 149.510 *et seq.* (providing IDR process implementing regulations). Thus, Anthem essentially alleges that HaloMD is liable for adhering to applicable statutory and regulatory deadlines and requirements.

Anthem's contention is also self-defeating. Even assuming Anthem's allegations of volume to be true, the only reason that HaloMD would need to initiate a high volume of claims through the IDR process is because of Anthem's high volume of refusals to make fair payments to healthcare providers, thereby forcing healthcare providers to resort to the IDR process. In other words, Anthem seeks to hold HaloMD and the other defendants in this action liable for a circumstance Anthem created.[7]

Finally, Anthem alleges that HaloMD is liable because it submitted false attestations of eligibility for the IDR process. But, in attempting to plead the materiality of the allegedly false attestations, Anthem misrepresents the attestation at issue, the IDR process, and specifically the process by which IDREs assess eligibility.

---

[7] Anthem describes HaloMD's initiation of "hundreds of disputes" at the same time as a "flood" throughout its pleading, including "*746 disputes against health plans per day*." Amend. Compl., ECF No. 25 at PageID 157-58, ¶ 101 (emphasis in original). A dose of reality is in order. By its own allegations, Anthem processes "tens of millions of health care claims annually." Amend. Compl., ECF No. 25 at PageID 136, ¶ 25. While HaloMD is bound by statutory and regulatory deadlines, Anthem is as well-positioned as any entity in the country to process and respond to IDR process filings (which, again, are only necessary if Anthem does not initially pay healthcare providers fairly).

V.        **IDREs Evaluate and Resolve Eligibility Disputes.**

By regulation, when notifying a party of its initiation of the IDR process, an initiating party must submit an attestation that it believes that the items and services under dispute qualify for resolution via the IDR process. 45 C.F.R. § 149.510(b)(2)(iii)(A)(6). This attestation provides:

> I, the undersigned initiating party (or representative of the initiating party), attests that to the best of my knowledge…the item(s) and/or service(s) at issue are qualified item(s) and/or service(s) within the scope of the Federal IDR process.[8]

Despite being the crux of Anthem's case, Anthem glosses over the actual language of the attestation. Furthermore, in each representative IDR proceeding offered by Anthem, Anthem does not allege that HaloMD knew that a dispute was ineligible. *See* Amend. Compl., ECF No. 25 at PageID 172-184, ¶¶ 159-205. But even more importantly, there is no authority that directs the IDRE to rely upon an initiating party's attestation to determine eligibility when eligibility is disputed. Nor is the attestation a certification of eligibility in any respect. Rather, it is an attestation that an initiating party, "to the best of [its] knowledge," believes a dispute is eligible.

The certifications contained in the CMS-1500 form, which healthcare providers use when submitting claims for services to healthcare insurers (including Medicare and other federal healthcare programs), and which often provide the basis for alleged falsity and liability under the federal False Claims Act, 31 U.S.C. § 3729 *et seq*., is a helpful comparator. The CMS-1500 form contains express certifications whereby the health care provider certifies, among other things, that the claim complies with Medicare laws and the services reflected in the claim were medically necessary. *See generally United States ex rel Montcrief v. Peripheral Vascular Assocs., P.A*., 133 F.4th 395, 400 (5th Cir. 2025) (discussing the CMS-1500 form certification). It contains no "to the best of [the healthcare provider's] knowledge" limiting language because: (i) the healthcare

---

[8] HaloMD's Request for Judicial Notice, Ex. A (Notice of IDR Initiation Form). The Notice of IDR Initiation Form even permits a healthcare provider to check "Unknown" when selecting the "Type of Plan" involved in the dispute.

provider presumably has access to all information needed to conclusively make such certifications; and (ii) there is no counterparty that validates every Medicare claim submitted by a healthcare provider (*i.e.*, not every Medicare claim is audited for medical necessity, for example).

Here, given the information asymmetry between commercial healthcare insurers and healthcare providers, Anthem is often exclusively in possession of material information relating to NSA applicability and IDR process eligibility. Indeed, it is for this very reason that, in November 2023, federal agencies published comprehensive proposed rulemaking that would require healthcare insurers, like Anthem, to use specific codes when processing out-of-network claims to communicate material information relating to IDR process eligibility to healthcare providers.[9] Federal agencies proposed such rule to enable healthcare providers to "understand not only when items and services are subject to the No Surprises Act, but also when they are not, to avoid submission of ineligible disputes…."[10]

While such rulemaking remains pending, by existing regulation, IDREs must determine eligibility in every single IDR proceeding. 45 C.F.R. § 149.510(c)(1)(v). And, Anthem's mischaracterizations of the attestation aside, the Amended Complaint completely omits the eligibility dispute resolution process inherent in the IDR process. If eligibility is disputed, there is a specific regulatory process designed to resolve such disputes. This process requires Anthem to submit eligibility challenges to the IDRE for consideration. 45 C.F.R. § 149.510(c)(1)(iii) ("[I]f the non-initiating party believes that the Federal IDR process is not applicable, the non-initiating party must…provide information regarding the Federal IDR process's inapplicability through the Federal IDR portal…"). The federal government's authoritative guidance document intended to

---

[9] *See* Federal Independent Dispute Resolution Operations Notice of Proposed Rulemaking, 88 Fed. Reg. 75744, 75759-63 (Nov. 3, 2023) (federal agencies explaining their proposal to require healthcare insurers to use codes when processing out-of-network claims to address gaps in communication between healthcare insurers and providers).
[10] *Id*. at 75761.

clarify IDR processes for disputing parties reiterates Anthem's regulatory obligation and the IDRE's duty to determine eligibility upon initiation of the IDR process. As set forth explicitly in the IDR Process Guidance for Disputing Parties:

### 1. Instances When the Non-Initiating Party Believes the Federal IDR Process Does Not Apply

If the non-initiating party believes that the Federal IDR Process is not applicable, the non-initiating party must notify the Departments by submitting the relevant information through the Federal IDR portal as part of the certified IDR entity selection process. This information must be provided not later than 1-business-day after the end of the 3-business-day period for certified IDR entity selection, (the same date that the notice of selection or of failure to select a certified IDR entity must be submitted). This notification must include information regarding the Federal IDR Process' inapplicability. The Departments will supply this information to the selected certified IDR entity, which may ask for additional information pursuant to this notification.

The certified IDR entity must determine whether the Federal IDR Process is applicable. The certified IDR entity must review the information submitted in the Notice of IDR Initiation and the notification from the non-initiating party claiming the Federal IDR Process is inapplicable, if one has been submitted, to determine whether the Federal IDR Process applies. If the Federal IDR Process does not apply, the certified IDR entity must notify the Departments and the parties within 3 business days of making that determination. While the matter is under review by the certified IDR entity, the timelines of the Federal IDR Process continue to apply, so the parties should continue to meet deadlines to the extent possible, as described in Section 9. Further, the Departments will maintain oversight of the applicability of the Federal IDR Process through their audit authority.[11]

The companion IDR Process Guidance for Certified IDR Entities contains nearly identical guidance.[12] Federal agencies have also published technical assistance that addresses the specific steps IDREs must undertake to confirm eligibility if a commercial healthcare insurer, like Anthem, disputes eligibility.[13] None of these steps direct the IDRE to rely (exclusively or otherwise) upon

---

[11] HaloMD's Request for Judicial Notice, Ex. B (IDR Guidance for Disputing Parties (last revised December 2023)).
[12] HaloMD's Request for Judicial Notice, Ex. C, (IDR Guidance for Certified IDR Entities, (last revised December 2023)), § 4.4 (Instances When the Non-Initiating Party Believes That the Federal IDR Process Does Not Apply).
[13] HaloMD's Request for Judicial Notice, Ex. D (Technical Assistance for Certified Independent Dispute Resolution Entities, (August 2022)).

the initiating party's attestation when determining eligibility. Instead, IDREs are directed to request and evaluate further documentation and explanations from the disputing parties and proceed only if such documentation demonstrates the eligibility of the dispute. Further, when submitting offers, all parties to the IDR proceeding have an opportunity to again challenge eligibility and submit additional information relating to eligibility for the IDRE's consideration.

Per IDR process regulations, if the IDRE finds a dispute ineligible, it "must notify…the parties within 3 business days of making that determination." 45 C.F.R. § 149.510(c)(1)(v). Regulatory agencies facilitate potential reconsideration of eligibility even after an IDRE payment determination. CMS, which oversees the IDR process, announced that parties may re-open closed IDR proceedings for "jurisdictional error[s]," such as where the IDRE "incorrectly determines" eligibility.[14] The Amended Complaint, which was filed well after CMS's announcement, conveniently pretends this eligibility reconsideration process does not exist.

Yet, the process to contest eligibility is robust. Anthem has multiple opportunities to challenge eligibility, but often is overruled. Amend. Compl. ECF No. 25 at PageID 159, 178-79, 181-83, 197, ¶¶ 107, 110, 178, 183, 191, 197, 204, 275. While Anthem alleges that its objections were overruled "due to Defendants' knowingly false attestation," it cannot fabricate theories of liability that directly conflict with existing statutory and regulatory processes.

And this is the heart of the matter. Anthem disagrees with IDRE determinations. But that disagreement does not justify burdening this Court with what is fundamentally an illegitimate and impermissible appeal.

---

[14] HaloMD's Request for Judicial Notice, Ex. E (CMS, Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties at 1 (June 2025)).

## VI.     Anthem Cannot Artfully Plead around the No Surprises Act's Judicial Review Prohibition and the Federal Arbitration Act.

In the NSA, Congress was unequivocal: "[an IDRE] determination…shall be binding upon the parties involved in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [IDRE]; and shall not be subject to judicial review, except in a case [that would allow a court to vacate the award under the Federal Arbitration Act]."  42 U.S.C. § 300gg-111(c)(5)(E)(i).

Given this prohibition against judicial review, many other federal courts have already concluded that the only right of action in the NSA derives from the incorporated vacatur sections of the Federal Arbitration Act ("FAA").  *See*, *e.g.*, *Guardian Flight, L.L.C. v. Health Care Serv. Corp.* ("*Guardian Flight I*"), 140 F.4th 271, 275 (5th Cir. 2025) ("The only right of action provided [in the NSA] derives from the incorporated vacatur sections of…the FAA"); *Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.* ("*Guardian Flight II*"), 140 F.4th 613, 620 (5th Cir. 2025)  ("[If a party] wish[es] to seek vacatur of [IDRE] awards, they must do so through the FAA paragraphs explicitly incorporated for that purpose."); *Modern Orthopaedics of NJ v. Premera Blue Cross*, No. 2:25-CV-01087 (BRM) (JSA), 2025 WL 3063648, at *8 (D.N.J. Nov. 3, 2025) ("[T]he only role contemplated for the federal courts in the NSA is the ability to vacate an award granted due to misconduct."); *Worldwide Aircraft Servs. v. Worldwide Ins. Servs., LLC*, No. 8:24-CV-840-TPB-CPT, 2024 WL 4226799, at *1–2 (M.D. Fla. Sept. 18, 2024) ("If no ground for vacatur exists, the arbitration award must be confirmed.").

Sixth Circuit precedent firmly establishes that the FAA "provides the exclusive remedy for challenging acts that taint an arbitration award," and that district courts may not reconsider the merits of an arbitration under the guise of post-award litigation. *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211–12 (6th Cir. 1982).  The Sixth Circuit further has consistently held that the FAA

precludes collateral attacks that repackage alleged arbitral wrongdoing into independent claims for damages. *See id*. at 1213; *In re Robinson*, 326 F.3d 767, 771 (6th Cir. 2003) ("[A]rbitration awards under the FAA are binding unless a motion to vacate or modify has been filed."). If a claim seeks to redress harm caused by an allegedly tainted award or that would require the court to assess the validity of the arbitration process or result, it is an impermissible collateral challenge and must be dismissed. *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 908 (6th Cir. 2000) (affirming dismissal because the plaintiff's claims collaterally attacked the arbitration award); *see also Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 747–50 (5th Cir. 2008) (dismissing civil RICO and state fraud claims premised on alleged fraud in an arbitration as impermissible collateral attacks).

The reasons such collateral actions are barred are easy to understand: arbitration processes are designed to deliver a prompt and final resolution with minimal judicial involvement so as not to overburden the judiciary. When Congress includes judicial review prohibitions in legislation and incorporates provisions of the FAA, as Congress did in the NSA, it is balancing the need for limited oversight against the strong interest in finality and efficiency. Collateral damages actions, if permitted, would upend that balance by inviting expansive discovery, duplicative fact-finding, and strategic re-litigation by well-funded, disappointed parties, like Anthem. This would ultimately chill reliance on the IDR process as a reliable dispute resolution process.

Accordingly, with the exception of Anthem's vacatur claim, all of Anthem's other claims are impermissible collateral attacks on IDR awards.

## VII. Anthem is Precluded from Relitigating Eligibility.

The doctrine of collateral estoppel (otherwise known as issue preclusion) equally precludes Anthem from relitigating IDR process eligibility. A defendant may raise the defense of issue

preclusion at the 12(b)(6) stage. *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F.App'x 268, 275 (6th Cir. 2016). Issue preclusion bars the re-litigation of any issue that was determined by a court of competent jurisdiction in a previous action between the same parties. *Id.* Federal courts routinely give preclusive effect to issues resolved by agencies and arbitrators. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) (holding that issue preclusion applies to administrative proceedings); *Amerisure Mut. Ins. Co. v. Swiss Reinsurance Am. Corp.*, No. 24-1492, 2025 WL 3094132 (6th Cir. Nov. 4, 2025) (applying the doctrine of collateral estoppel in connection with arbitration proceedings); *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 F.App'x 484, 489 (6th Cir. 2017) (same).

Federal law provides that issue preclusion applies when: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue. *Bills v. Aseltine*, 52 F.3d 596, 604 (6th Cir. 1995); *see also Fyda Freightliner Cincinnati, Inc. v. Daimler Vans USA LLC*, No. 2:21-CV-5077, 2022 WL 2073394, at *4 (S.D. Ohio June 9, 2022) (identifying the elements of issue preclusion under Ohio law).

Here, the elements of issue preclusion are satisfied.[15] All of Anthem's claims relate to services that allegedly were ineligible for resolution through the IDR process. But the IDR process provides multiple opportunities for disputing parties to actually litigate eligibility before an IDRE makes a payment determination. By regulation, Anthem must raise any eligibility challenges to the IDREs. 45 C.F.R. § 149.510(c)(1)(iii). Anthem acknowledges as much by referencing the

---

[15] This is true regardless of whether the Court applies federal or Ohio preclusion law.

objections to eligibility that it submitted to IDREs. IDREs also must always determine eligibility before permitting a case to proceed through the IDR process and selecting an offer. Anthem thus had an opportunity, with respect to each representative proceeding referenced in the Amended Complaint and all other IDR proceedings, to fully and fairly litigate the issue of eligibility. While Anthem may be dissatisfied with IDRE eligibility determinations, it is precluded from seeking judicial review of eligibility issues that IDREs already resolved.

**VIII.      Anthem's Claims Are Barred by the *Noerr-Pennington* Doctrine.**

On its face, the Amended Complaint also must be dismissed in its entirety because the conduct alleged by Anthem constitutes core petitioning activity protected by the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine is grounded in the First Amendment's Petition Clause, which provides that "Congress shall make no law…abridging…the right of the people…to petition the Government for a redress of grievances." U.S Const. amend. I. The *Noerr-Pennington* doctrine immunizes private actors from litigation in connection with their petitioning activity, unless the petitioning amounts to a sham. *See VIBO Corp. v. Conway*, 669 F.3d 675, 683–86 (6th Cir. 2012) (providing background on the *Noerr-Pennington* doctrine).

Although the *Noerr-Pennington* doctrine initially arose in the context of efforts to petition the legislative and executive branches regarding the passage or enforcement of laws in antitrust matters, the Supreme Court has since applied the doctrine beyond the legislative and executive enforcement contexts. *See VIBO Corp.*, 669 F.3d at 684 (citations omitted). It shields any effort to elicit action from government decision-makers, including administrative agencies and courts and arbitrative bodies acting pursuant to federal laws. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–511 (1972); *see also Guardian Flight II,* 140 F.4th at 623 (concluding that IDREs are protected by arbitral immunity for their roles in the IDR process).

25

Courts uniformly hold that *Noerr-Pennington* immunizes a party from RICO and other civil claims premised on petitioning activity. *See generally Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691, 715 (E.D. Mich. 2022), *aff'd*, 82 F.4th 466 (6th Cir. 2023) (dismissing multiple civil claims against the defendants based on the application of the *Noerr-Pennington* doctrine); *EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 19-13698, 2021 WL 843145, at *4-8 (E.D. Mich. Mar. 5, 2021) (dismissing RICO counts based on the *Noerr-Pennington* doctrine and discussing generally the doctrine's applicability).

Here, Anthem's theory of liability is that HaloMD abused the IDR process—by filing thousands of disputes, by inflating offers, and by submitting false attestations—yet the substance of Anthem's theory is indistinguishable from the conduct *Noerr-Pennington* squarely protects: requesting relief through governmental intervention. HaloMD's initiation of disputes through the IDR process is quintessential petitioning: it is the statutorily prescribed means for out-of-network healthcare providers to resolve certain disputes with commercial healthcare insurers to obtain binding payment determinations. HaloMD's submissions under the IDR process clearly constitute "the channels and procedures" of federal agencies used for resolution of certain out-of-network payment disputes. *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000) (concluding that Supreme Court precedent clearly establishes that the submission of complaints to administrative agencies constitutes petitioning activity protected by the First Amendment).

The *Noerr-Pennington* doctrine's narrow "sham" litigation exception also does not apply. The "sham" litigation exception provides that *Noerr-Pennington* immunity does not apply to sham lawsuits filed for the purpose of interfering with competition. For the exception to apply, the underlying lawsuits must have been "objectively baseless" and "an attempt to interfere directly with the business relationships of a competitor." *Ashley Furniture Indus., Inc. v. Am. Signature,*

*Inc.*, No. 2:11-CV-427, 2015 WL 12999664, at *4 (S.D. Ohio Mar. 12, 2015) (citing *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 408 (6th Cir. 2012).

Anthem's Amended Complaint does not plausibly allege that HaloMD's petitioning was objectively baseless, or that HaloMD's real purpose was to use the IDR process for anti-competitive purposes. IDREs are, by regulation, required to determine eligibility prior to making a payment determination. The Amended Complaint acknowledges that HaloMD prevailed in a significant percentage of disputes, confirming that HaloMD's positions with respect to eligibility were objectively reasonable. Indeed, a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993); *see also VIBO Corp.*, 669 F.3d at 686 (providing that a defendant petitioning the government for and obtaining a specific outcome "is the precise situation that falls outside of the sham exception").

Put simply, if HaloMD's initiation of the IDR process itself is immunized, all of Anthem's claims based on those initiations collapse.

## IX. Anthem Has Not Alleged an Injury Traceable to HaloMD.

Apart from the statutory and doctrinal bars to Anthem's claims, Anthem does not even establish that it has standing, as it does not sufficiently allege a concrete and particularized injury traceable to HaloMD's allegedly wrongful conduct. *See Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024) (discussing Article III's standing requirement).

Anthem's issue is with IDRE determinations, but Anthem does not allege that it has actually paid anything or suffered any other cognizable harm traceable to HaloMD. Anthem just alleges that it was ordered to pay in accordance with IDRE payment determinations. *See, e.g.*, Amend. Compl., ECF No. 25 at PageID 133, 159, 161, 172–84. Further, even if Anthem had alleged an

injury, Anthem's theory depends on a speculative chain of events in which: (a) HaloMD initiates an IDR proceeding, (b) an IDRE purportedly errs in finding the dispute eligible for the IDR process and selects HaloMD's offer, and (c) Anthem is thereby injured. But the independent decisions of IDREs—made pursuant to federal statutory directives—sever any causal link between HaloMD's initiation of IDR and Anthem's alleged harms. *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 485 (6th Cir. 2022) ("When a third party that could have prevented the harm acts to cause the harm instead, then the chain of causation is broken."). Further, to the extent Anthem's allegation that IDREs acted on "one-sided information" is an acknowledgement that Anthem failed to contest eligibility or provide information supporting its eligibility objections as regulations require, Anthem can only blame itself. Its own actions were a superseding cause of its alleged injuries. *NOCO*, 35 F.4th at 486.

For these reasons, Anthem has not sufficiently alleged an injury traceable to HaloMD.

## X.     The Court Has No Personal Jurisdiction over HaloMD.

Independent of Anthem's failure to allege injury actually traceable to HaloMD, the Amended Complaint also fails to establish personal jurisdiction over HaloMD, a nonresident Defendant. The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Growella, Inc. v. Ganz*, No. 1:23-CV-832, 2024 WL 3823430, at *1 (S.D. Ohio Aug. 14, 2024) (quotation omitted). A plaintiff meets this burden by setting forth specific facts showing that the court has jurisdiction. *Id*. (quotation omitted).

Here, Anthem exclusively relies upon: (i) RICO; (ii) the Employee Retirement Income Security Act of 1974 ("ERISA"); and (iii) 28 U.S.C. § 1367, the Court's supplemental jurisdiction authority to assert that this Court has jurisdiction over this action and all claims and Defendants. Amend. Compl., ECF No. 25 at PageID 135-36, ¶¶ 23-24. But neither RICO nor ERISA provide

legitimate bases for jurisdiction in this action, nor does this Court independently have jurisdiction over HaloMD with respect to Anthem's state law claims.[16]

While ERISA provides for nationwide service of process, 29 U.S.C. § 1132(e)(2), personal jurisdiction under 29 U.S.C. § 1132(e)(2) is only established if a plaintiff establishes subject matter jurisdiction under 29 U.S.C. § 1132(a)(3), *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 524 (6th Cir. 2000). As set forth below, Anthem's ERISA claim does not arise under 29 U.S.C. § 1132(a)(3) as Anthem does not seek to enjoin an ERISA violation—it seeks to enjoin HaloMD's access to the IDR process. Further, RICO extends personal jurisdiction through nationwide service of process over non-resident defendants, but only if venue is proper and the "ends of justice" require it. 18 U.S.C. § 1965(b). *See Bon Secours Mercy Health, Inc. v. DevonMD, LLC*, No. 1:20-CV-919, 2025 WL 676446, at *10 (S.D. Ohio Mar. 3, 2025) (when deciding whether conferring personal jurisdiction meets the "ends of justice," courts evaluate the general balance of hardships between the parties).

Here, Anthem alleges that HaloMD is a Delaware limited liability company and it is a citizen of Texas because its two members and their sub-members are citizens of Texas. Amend. Compl., ECF No. 25 at PageID 134, ¶¶ 14-15. None of the operative factual allegations underlying Anthem's claims arise from HaloMD's alleged contacts with Ohio, nor does Anthem's Amended Complaint connect HaloMD to Ohio whatsoever, except for a vague allegation that "HaloMD solicits and represents physician practices…in Ohio." *Id*. Rather, each of Anthem's claims relates to IDR proceedings overseen by federal agencies. Accordingly, regardless of the illegitimacy of

---

[16] Anthem alleges that "for the purposes of diversity, HaloMD is a citizen of Texas." Amend. Compl., ECF No. 25 at PageID 134, ¶¶ 14-15. Anthem's contention with respect to diversity is confusing as Anthem does not plead diversity of citizenship under 28 U.S.C. § 1332 as a jurisdictional basis. Regardless, Anthem has not pleaded any facts that would establish personal jurisdiction over HaloMD under Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A), or that would otherwise establish that personal jurisdiction over HaloMD comports with due process.

Anthem's RICO claim, conferring personal jurisdiction over HaloMD would not be in the interests of justice.

For these reasons, Anthem has not carried its burden to make a *prima facie* showing that this Court has personal jurisdiction over HaloMD.

## XI.  Anthem's Amended Complaint Fails to State a Claim (with or without Particularity).

While dismissal with prejudice is warranted for those many reasons set forth above, each one of Anthem's claims individually fails.

### 1.  Count I: Anthem's RICO Claim Fails.

Intended to curb the mafia and other organized crime, RICO authorizes civil causes of action and prohibits conducting or participating in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity, as well as conspiring to do so.  18 U.S.C. §§ 1964(c), 1962(c)-(d).  To sufficiently allege a RICO claim, a plaintiff must plead proximate causation and show a racketeering offense "led directly to [its] injuries," a requirement that "elevates a plaintiff's burden by requiring more than a showing of mere foreseeability."  *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022).

#### A.  Anthem Does Not Allege that HaloMD Proximately Caused Damage to Anthem.

Anthem's RICO claims are predicated on allegations that HaloMD wrongfully initiated the IDR process.  However, like Anthem's general failure to allege an injury traceable to HaloMD, Anthem does not establish that HaloMD proximately caused damage to Anthem to sufficiently allege a RICO claim.  *See Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548 (6th Cir. 2022) (discussing RICO's proximate cause requirement and affirming dismissal due to the plaintiff's failure to plead proximate causation).  Again, Anthem's gripe is with IDRE determinations.  But

for every IDR proceeding in which Anthem did not prevail, the IDRE's independent judgment and decisions were intervening factors that broke any direct causal link between Anthem's alleged injuries and HaloMD's alleged misconduct. *NOCO*, 35 F.4th at 485 (holding that third-party acts break the causal chain).

The RICO causation standard is "demanding" and the direct-link requirement is an important measure that helps conserve scarce judicial resources by avoiding "a host of practical hurdles federal courts would otherwise face." *Grow Mich., LLC*, 50 F.4th at 594 (emphasis added); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

But the outcome of each IDR proceeding is hardly foreseeable. In those circumstances where Anthem is a non-initiating party, Anthem has an opportunity to challenge eligibility, and IDREs must determine IDR eligibility prior to any payment determination. Amend. Compl., ECF No. 25 at PageID 136-37, ¶ 28; 45 C.F.R. § 149.510(c)(1)(v). Thus, no eligibility determination was guaranteed for any individual IDR proceeding.[17] And again, to the extent Anthem failed to contest eligibility or provide information supporting its objections, Anthem's own actions were a superseding cause of its alleged injuries. *NOCO*, 35 F4th at 486.

In any event, Anthem's entire case rests on allegations of false attestations submitted to IDREs, but IDREs do not rely on such attestations when determining eligibility. When eligibility is disputed, IDREs always make an eligibility determination before making a binding payment determination. In each case, the IDREs' actions and Anthem's own conduct broke any direct causal

---

[17] Anthem's Amended Complaint acknowledges that when IDREs determine that the offers submitted by commercial healthcare insurers are more reasonable, IDREs do select such offers (*e.g.*, in 15% of cases in the second half of 2024). Amend. Compl., ECF No. 25 at PageID 151, ¶ 76.

link to HaloMD's alleged conduct. Accordingly, Anthem does not and cannot plausibly plead proximate cause to support its RICO claims.

### B. Anthem Fails to Plausibly Plead with Particularity that HaloMD Engaged in a Pattern of Racketeering Activity.

Even if Anthem's Amended Complaint sufficiently alleged proximate cause, Anthem's RICO claim separately fails to allege a pattern of racketeering activity.

#### i. Litigation Activities are Not Predicate Racketeering Acts.

First, courts have overwhelmingly barred civil RICO claims based on allegedly fraudulent litigation activities, like IDR proceedings. *See Kim v. Kimm*, 884 F.3d 98, 104–05 (2d Cir. 2018) (collecting federal court cases holding that litigation activity cannot act a predicate offense for a civil RICO claim). Otherwise, "every unsuccessful lawsuit could spawn a retaliatory action" that would erode bedrock doctrines like collateral estoppel. *Id.* Here, while Anthem misrepresents both the initiating party's attestation and the process to resolve eligibility disputes generally, even if Anthem could plausibly plead the falsity of such attestation, HaloMD's allegedly false attestations are no more federal wire fraud or mail fraud than Anthem's and its lawyers' own multiple factual misrepresentations in the initial complaint filed by Anthem in this case.[18]

#### ii. Anthem Fails to Allege Two Predicate Racketeering Acts.

Second, a "pattern of racketeering activity" requires at least two alleged acts of racketeering activity against each defendant. 18 U.S.C. § 1961(5). The Sixth Circuit has adopted a "multi-factor test" for determining whether a pattern exists in a RICO case, which includes consideration of factors including: the length of time the racketeering activity existed; the number

---

[18] After Anthem filed this action, Anthem was notified of multiple misrepresentations in its original complaint. Only when threatened with the pursuit of sanctions did Anthem strike the false factual allegations and amend its pleading. Presumably, Anthem is not of the position that its original pleading in this action exposes it and its counsel to RICO liability.

of different schemes; the number of predicate acts within each scheme; the variety of species of predicate acts; the distinct types of injury; the number of victims; and the number of perpetrators. *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995).

Here, even if an isolated predicate act were adequately alleged against HaloMD, the Amended Complaint does not plausibly plead any pattern of racketeering activity. At most, Anthem alleges the following as predicate acts for its RICO claim: (1) HaloMD falsely attested that, to the best of its knowledge, disputes were eligible for IDR; (2) HaloMD initiated a high volume of IDR proceedings; and (3) HaloMD submitted inflated settlement offers. Amend. Compl., ECF No. 25 at PageID 153, ¶ 84. Anthem offers no non-conclusory allegations that any other Defendant submitted any false attestations, let alone committed at least two RICO predicate offenses.

### iii. Anthem's Wire Fraud Allegations Lack Particularity.

Third, Anthem fails to allege wire fraud predicates with the requisite particularity under Fed. R. Civ. P. 9(b). Wire fraud requires: (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Robinson*, 99 F.4th 344, 354 (6th Cir. 2024) (quotations and citations omitted). A scheme to defraud "includes any plan or course of action by which someone intends to deprive another…by deception of money or property by means of false or fraudulent pretenses, representations, or promises." *Id*. Thus, a defendant must have "said something materially false." *Id*.

For the reasons set forth above, none of Anthem's allegations are cognizable for wire fraud purposes, as there are no authorities that arbitrarily limit the number of IDR proceedings that a provider may initiate or the amount that a provider may offer in the IDR process. Nor is the

attestation a certification of eligibility. Fundamentally, Anthem alleges that, starting in 2024, HaloMD initiated IDR proceedings and attested that it believed such disputes were eligible for resolution through the IDR process. Further, Anthem's mischaracterizations of the attestation aside, with respect to the representative proceedings that Anthem identifies in its Amended Complaint, Anthem does not specifically allege that HaloMD knew that any dispute was ineligible for resolution through the IDR process. Rather, Anthem offers only conclusory allegations that HaloMD generally knew that its statements were false. Amend. Compl., ECF No. 25 at PageID 154-56, ¶¶ 87-94. Such conclusory allegations are insufficient to satisfy Fed. R. Civ. P. 9(b)'s requirement that Anthem plead a scheme to defraud with particularity.

### iv. Anthem Fails to Allege a Distinct RICO Enterprise.

RICO also requires a defendant to "conduct or participate" in the affairs of an enterprise that is separate and distinct from the defendant itself. A properly pleaded RICO claim cogently alleges activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact. *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000).

Anthem's Amended Complaint disregards this foundational rule. It alleges that HaloMD and its principals constitute the "HaloMD Defendants," while, at the same time, it lumps HaloMD and other Defendants into the "LaRoque Family Enterprise"—an amorphous collective. Anthem cannot recast ordinary contractual relationships to sufficiently establish an association-in-fact. *Taborac v. NiSource, Inc.*, No. 2:11-CV-498, 2011 WL 5025214, at *8 (S.D. Ohio Oct. 21, 2011) (dismissing the plaintiff's RICO claim, in part, because the plaintiff only superficially pleads association-in-fact). For this reason, Anthem also fails to allege a distinct RICO enterprise.

### 2. Count II: Anthem RICO's Conspiracy Claim Fails.

To plausibly state a RICO conspiracy claim, Anthem must successfully allege all of the elements of a RICO violation, as well as allege the "existence of an illicit agreement to violate the substantive RICO provision." *See Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F.App'x 446, 458-59 (6th Cir. 2019). Because Anthem's substantive RICO claim fails, its derivative RICO conspiracy claim fails as well. *Id*.

Here, Anthem also offers no non-conclusory allegations of an agreement to commit a RICO offense. Anthem alleges only business arrangements for the purpose of seeking fair payment for legitimate services provided by out-of-network healthcare providers to patients with healthcare insurance through Anthem. The mere fact that HaloMD allegedly submitted attestations to the IDR process is inadequate to plead that HaloMD agreed to commit a federal RICO offense to support a RICO conspiracy claim.

### 3. Count III: Anthem's Ohio Corrupt Activity Act Claim Fails.

Anthem's Ohio Corrupt Activity Act ("Ohio RICO") claim fails for the same reasons its federal RICO claims do. Ohio RICO is patterned after the federal RICO statute. It provides that it is illegal for any "person employed by, or associated with, any enterprise [to] conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." Ohio Rev. Code § 2923.32(A)(1). A plaintiff that fails to plausibly plead the elements necessary to establish a federal RICO violation fails to state a plausible claim under Ohio RICO. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013).

As with federal RICO, to state a claim under Ohio RICO, a plaintiff must allege: (1) that the defendant committed two or more specifically prohibited state or federal criminal offenses, (2) that the defendant's criminal conduct constitutes a pattern of corrupt activity, and (3) that the

defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Id.* (citing *Kondrat v. Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997)). To state an Ohio RICO claim, Anthem must also allege at least one criminal act not indictable as federal mail and wire fraud. Ohio Rev. Code § 2923.34(A); *see Rahimi v. St. Elizabeth Med. Ctr.*, No. C3-96-126, 1997 WL 33426269, at *2 & n.1 (S.D. Ohio July 16, 1997) (holding that the plaintiff did not state an Ohio RICO claim because the entire alleged pattern of corrupt activity was actionable under mail fraud statutes).

Here, since Anthem fails to plausibly plead a RICO claim, Anthem's Ohio RICO claim fails. In addition, Anthem does not allege a criminal act apart from federal mail and wire fraud, as alleged telecommunications fraud is not a materially distinct incident of corrupt activity. Accordingly, Anthem's Ohio RICO claim fails as well.

### 4. Count IV: Anthem's Theft by Deception Claim Fails.

Anthem's claim for theft by deception hinges on the conclusory assertion that HaloMD obtained Anthem's property by deception. But Anthem does not plead allegations sufficient to satisfy the statutory elements of criminal theft.

A civil action predicated on Ohio Rev. Code § 2307.60 requires well-pleaded facts showing that the defendant's conduct constitutes every element of a specific criminal offence—in this case, theft by deception. Accordingly, Anthem must plead that HaloMD: (1) knowingly obtained or exerted control over Anthem's property, (2) without Anthem's consent, (3) by deception, and (4) to deprive Anthem of its money permanently. *See* Ohio Rev. Code § 2913.02(A)(3).

Here, Anthem alleges that HaloMD sought adjudication of payment disputes between out-of-network healthcare providers and Anthem through the IDR process, which Congress created precisely to resolve such payment disputes. Stripped of rhetoric, Anthem's allegations describe

36

nothing more than a dispute over whether specific services qualified for resolution through the federal IDR process. Anthem cannot repackage its allegations as a theft offence. An intent to secure a payment determination through an arbitration process created by a federal statute is not an intent to steal in any respect—it is an intent to be paid what one believes it is owed. The pursuit of a colorable claim of right negates the requisite *mens rea* for theft.

The Amended Complaint also does not allege that HaloMD ever actually "obtained or exerted control over" Anthem's funds. Indeed, conspicuously absent from Anthem's pleading is any contention that Anthem ever made any payments to HaloMD specifically as a consequence of IDRE payment determinations. Ohio Rev. Code § 2913.01(A) also defines "deception" as a false representation that "creates, confirms, or perpetuates a false impression" of fact or law. The gravamen of Anthem's complaint is that HaloMD attested that it believed disputes were eligible for the IDR process when Anthem contends such disputes were ineligible. Eligibility, however, is a question of law squarely placed before the IDRE in every IDR proceeding. The assertion of a legal contention—especially one accepted by a certified, neutral IDRE—is hardly inherently deceptive. Anthem cannot manufacture a civil claim based on criminal theft simply because it disagrees with IDRE eligibility determinations.

### 5. Count V: Anthem's Civil Conspiracy Claim Fails.

Anthem's civil conspiracy claim fares no better. Under Ohio law, to state a plausible claim for civil conspiracy, a plaintiff must allege: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *See Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (citation omitted).

Anthem's conspiracy count fails because the alleged wrongful initiation of IDR proceedings is not an actionable tort under Ohio law. Without a plausible predicate tort, Anthem's derivative conspiracy claim automatically fails. *See Burgess v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013) ("[a] civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy."). Further, the conspiracy theory alleged by Anthem is that HaloMD and its co-Defendants shared a "common purpose" to "flood" the IDR process with ineligible disputes. But Anthem never alleges a single communication in which HaloMD agreed with any other Defendant to pursue an unlawful objective, specifies who supposedly reached that agreement, or describes when or how the agreement was reached. Instead, Anthem's Amended Complaint strings together alleged disparate business relationships, labels them an enterprise, and leaps to the conclusion that all Defendants must have conspired. Threadbare assertions of a "coordinated enterprise" and "orchestrated" conduct are insufficient. *See Ogle*, 924 F. Supp. 2d at 914 (dismissing a civil conspiracy claim because the plaintiffs failed to allege sufficient supporting facts).

Anthem's own allegations also defeat the "malicious combination" element. Under the intracorporate conspiracy doctrine, employees or agents of the same collective entity cannot be held liable as conspirators because a single entity, by definition, cannot conspire with itself. *See Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Anthem alleges that HaloMD was retained to represent providers in ineligible IDR disputes, and upon information and belief, HaloMD "entered into agreements…to defraud Anthem through the abuse of the IDR process." Amend. Compl., ECF No. 25 at PageID 194-95, ¶¶ 259–60. But Anthem wholly undermines its own conspiracy allegations by also alleging that: "The LaRoque Family Enterprise...functioned as a continuing *unit*"; "Defendants do not operate as *separate, independent actors*. Rather, they

38

function as participants in a *unified scheme*"; and "The LaRoque Family Enterprise operates via a web of *interrelated corporate entities they directly or indirectly control*." *Id.* at PageID 162-63, ¶¶ 122, 125; *see also id.* at PageID 163-171, ¶¶ 127–56 (setting forth specious allegations of attenuated connections to suggest a lack of corporate separateness). Either the Defendants are independent, separate actors capable of conspiring with each other, or they are all one and the same monolithic boogeyman, in which case there is no "scheme," and none of them can be subjected to conspiracy liability under Ohio law. For these reasons, Anthem's civil conspiracy claim fails.

### 6. Count VI: Anthem's Ohio Deceptive Trade Practices Act Claim Fails.

Anthem also fails to state a claim under the Ohio Deceptive Trade Practices Act ("ODTPA"), which imposes liability for engaging in deceptive trade practices. Ohio Rev. Code § 4165 *et seq.* The ODTPA is modeled on the federal Lanham Act and is designed to regulate trademarks, unfair competition, and false advertising. *Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 479 (Ohio Ct. App. 2018). The ODTPA expressly does not apply to conduct that complies with the rules of, or a statute administered by, a federal agency. Ohio Rev. Code § 4165.04(A)(1).

In the Amended Complaint, Anthem alleges that HaloMD violated: (a) Ohio Rev. Code § 4165.02(A)(7), which provides that a person engages in deceptive trade practices when it "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" and (b) Ohio Rev. Code § 4165.02(A)(9), which provides that a person engages in deceptive trade practices if it: "represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Specifically, Anthem alleges that, through HaloMD's allegedly

false attestations of eligibility in the IDR process, HaloMD is liable under ODTPA because HaloMD: (1) "represented that the services in dispute had sponsorship, approval, or characteristics (*i.e.*, that they were within the scope of the NSA and qualified for IDR) when, in fact, the services did not (*i.e.*, they were ineligible for IDR, despite Defendants' false attestation to the contrary in the IDR initiation notices);" and (2) "represented that the services in dispute were of a particular standard, quality, or grade (*i.e.*, that they were within the scope of the NSA and qualified for IDR) when, in fact, the services were not (*i.e.*, they were ineligible for IDR, despite Defendants' false attestations to the contrary in the IDR initiation notices)." Amend. Compl., ECF No. 25 at PageID 196, ¶¶ 268–69.

Anthem's attempted invocation of the ODTPA is absurd. The ODTPA provisions, by their plan language, apply to cases involving commercial advertising and goods and services misrepresentation, not to statements made in connection with IDR proceedings, a statutory arbitration process created by Congress and managed by federal agencies. Simply put, even disregarding *Noerr-Pennington* immunity, the ODTPA does not apply.

**7. Count VII: Anthem's Fraudulent Misrepresentation Claim Fails.**

Anthem's fraudulent misrepresentation theory rests on the conclusory refrain that HaloMD "falsely attested" in IDR submissions that the underlying services qualified for the IDR process. The Amended Complaint pleads no facts that, even if accepted as true, satisfy the well-established elements of an actionable Ohio fraudulent misrepresentation claim—(1) "a representation, or where there is a duty to disclose, concealment of a fact," (2) that "is material to the transaction," (3) "made falsely with knowledge of its falsity" or utter disregard as to its truth, (4) with intent to mislead another into reliance, (5) "justifiable reliance," and (6) "resulting injury." *See Abira Med. Lab'ys, LLC*, 2024 WL 4817444, at *3 (*quoting Mikulski v. Centerior Energy Corp.*, 501 F.3d 555,

562 n.4 (6th Cir. 2007)).  Nor does it satisfy Fed. R. Civ. P. 9(b), as Anthem's pleading lumps together thousands of IDR initiations submitted over a twenty-month period, attaches the label "false" to each, and proclaims fraud.  *See id.* (dismissing a fraudulent misrepresentation claim because the plaintiff failed to plead such claim with particularity by not including the time and place of the alleged representation).

Here, Anthem never identifies a single discrete communication from HaloMD (to Anthem or anyone else) that contains a false representation.  As set forth above, the attestation that a dispute is "within the scope of the Federal IDR process" is, at most, a belief regarding statutory eligibility, not a factual assertion that can support a fraud claim.  Moreover, Anthem had the unequivocal right and responsibility to raise ineligibility with the IDRE, and it admits that it exercised that right in many disputes.  Anthem's Amended Complaint also contains no facts creating a strong inference of scienter.  It offers only the circular conclusion that because HaloMD's eligibility view was wrong, HaloMD must have known that a dispute was ineligible.  Allegations of such "fraud by hindsight" are insufficient, and Anthem's failure to plead particularized facts showing HaloMD knew, at the moment of each attestation, that such attestations were false is dispositive.

### 8.  Count XIII: Anthem's Vacatur Claim Fails.

Anthem's Amended Complaint asks this Court, "in the alternative," to vacate binding IDRE awards.  This Court should not permit Anthem's vacatur claim to proceed.

As an initial matter, Anthem only identifies a handful of specific IDR proceedings in its Amended Complaint, but it asks this Court to set aside "thousands" of unspecified IDR awards based on inconsistent reasons.  Anthem cannot plead a claim for vacatur across an indeterminate universe of IDR awards and otherwise satisfy Fed. R. Civ. P. 8 and 9(b).  Indeed, apart from the

few IDR proceedings specifically identified, HaloMD has no idea what other IDR awards allegedly are within the scope of Anthem's vacatur claim.

But more importantly, Anthem fails to state a plausible claim for vacatur at all. The NSA expressly limits judicial review of IDR awards to those circumstances warranting vacatur under the FAA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (cross-referencing 9 U.S.C. § 10(a)). Here, Anthem alleges that vacatur is permitted because: (i) the IDR awards at issue were procured by fraud and undue means; and (ii) the IDREs otherwise exceeded their powers in making such awards. But Anthem does not sufficiently allege any of these bases to support a vacatur claim.

To set aside an IDR award for fraud, Anthem must show: (1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration. *See Int'l Bhd. of Teamsters, Loc. 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003). By its own pleading, Anthem cannot satisfy this standard, as Anthem acknowledges that it objects to IDR process eligibility and otherwise communicates its positions regarding eligibility to healthcare providers and IDREs. Nor has Anthem alleged any concrete facts that suggest that HaloMD engaged in any "illegal, immoral, or in bad faith" conduct to show undue means. *See Barcume v. City of Flint*, 132 F. Supp. 2d 549, 556 (E.D. Mich. 2001) (analyzing the FAA's undue means prong and concluding that an arbitration award should not be vacated when counsel engaged in *ex parte* communications with an arbitrator).

As for the allegation that the IDREs exceeded their powers, Anthem may not relitigate eligibility issues that are expressly within the scope of the IDRE's authority, and which IDREs must always resolve prior to issuing payment determinations. Indeed, were Anthem's "fraud-by-initiation" theory plausible, the NSA's judicial review prohibition would be meaningless.

### 9. Count IX: Anthem's ERISA Claim Fails.

Anthem's ERISA claim for equitable relief fails for multiple reasons. First, ERISA's cause of action for equitable relief limits standing to sue to a participant, beneficiary, or fiduciary. 29 U.S.C. § 1132(a)(3). Anthem never alleges that it is any of these things. Rather, in its ERISA cause of action, Anthem alleges only that it provides claims administration services for certain health benefit plans governed by ERISA. Amend. Compl., ECF No. 25 at PageID 201, ¶ 293. Elsewhere in its Amended Complaint, Anthem alleges that it only administers and provides administrative services, "such as provider network development, customer service, and claims pricing and adjudication" to self-funded plans, whose affiliated employers "are financially responsible for any payment of benefits or other losses." *Id.* at PageID 136-37, ¶¶ 27–29. While Anthem never expressly alleges that it is a fiduciary, by law, an entity that performs purely ministerial functions for a self-funded plan is not a fiduciary because it does not have discretionary authority regarding administration of the plan or management of the plan assets. *E.g., Briscoe v. Fine,* 444 F.3d 478, 485-88 (6th Cir. 2006) (holding that fiduciary status requires discretionary decision-making authority over claims or control over plan assets, but mere performance of administrative or ministerial tasks, such as processing claims or applying plan rules, does not confer such status); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 455 (6th Cir. 1991) (holding that a claims processor without discretion to make final claims decision is not an ERISA fiduciary). For this reason, Anthem has no standing to assert an ERISA claim under 29 U.S.C. § 1132(a)(3).

Further, the Amended Complaint's separate failure to identify any specific plan on behalf of which Anthem claims to be acting as fiduciary is independently fatal. Fiduciary status under ERISA does not exist in gross but only "with respect to a plan" and only to the extent the person exercises the requisite discretion or control required by the statute. *See* 29 U.S.C. § 1002(21). A

43

purported fiduciary must therefore plausibly allege facts showing that it is a fiduciary with respect to each particular ERISA plan for which it is seeking (a)(3) relief.  Here, Anthem alleges no such facts with respect to any particular plan.

Finally, Anthem does not seek to enjoin an actual ERISA violation.  Anthem predicates its ERISA claim on 29 U.S.C. § 1185e, a codified provision of the NSA.  29 U.S.C. § 1132(a)(3) provides that that a civil action may be brought by a fiduciary: (A) to enjoin any act or practice which violates any ERISA provision, or (B) to obtain other appropriate equitable relief to redress such violations.  But 29 U.S.C. § 1185e does not actually provide any authority for the "violations" that Anthem seeks to enjoin through 29 U.S.C. § 1132(a)(3).  Nothing that Anthem seeks to enjoin is a violation of 29 U.S.C. § 1185e, including initiating IDR proceedings: (a) without first properly initiating and engaging in open negotiations; (b) for services subject to Ohio's specified State law; (c) for services that Anthem denied and thus are ineligible for the IDR process; and (D) for services when Defendants failed to comply with other unspecified "NSA requirements."  In fact, 29 U.S.C. § 1185e does not provide, anywhere, that it is an ERISA violation to initiate an IDR proceeding for any reason.  Rather, 29 U.S.C. § 1185e just establishes the parameters of the IDR process.

Anthem's ERISA claim is thus a veiled attempt to try, through this Court, to limit HaloMD's ability to seek relief when Anthem refuses to pay fair rates for services provided by healthcare providers.  Accordingly, Anthem's ERISA claim under 29 U.S.C. § 1132(a)(3) fails.

**10. Count X: Anthem's Claim for Declaratory and Injunctive Relief is Improper.**

Declaratory and injunctive relief are remedies, not independent causes of action.  *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021).  Moreover, a claim for declaratory and injunctive relief cannot stand on its own; it must be linked to an underlying substantive claim for relief.  *See Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp. 2d 583, 592-93 (N.D. Ohio

2004). Further, while the federal Declaratory Judgment Act, 28 U.S.C. § 2201, may provide an avenue for district courts to declare the rights and other legal relations of interested parties, the Supreme Court has clarified that federal courts have no obligation to do so. *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

Here, for the reasons set forth above, Anthem has not stated a plausible claim in its Amended Complaint, so its request for declaratory and injunctive relief fails for that reason alone. But even if Anthem did state a claim, this Court should not entertain Anthem's efforts to bait it into issuing a declaration of rights of parties to access the IDR process, which was only recently created by Congress and which continues to evolve and is the subject of ongoing rulemaking.[19] Courts often refuse to exercise such discretionary authority when considerations weigh against it, including when the requested declarations effectively would result in the overturning of findings of other arbiters. *See*, *e.g.*, *Novel v. New York*, No. 2:13-CV-698, 2014 WL 5858874, at *2 (S.D. Ohio Nov. 12, 2014) (declining to exercise jurisdiction over the plaintiff's request for declaratory relief because the request asked the court to effectively overturn the findings of another state court).

## XII. HaloMD Is Entitled to Recover Its Fees Under Ohio's Uniform Public Expression Protection Act.

Finally, HaloMD is entitled to recover its fees under Ohio's recently enacted anti-SLAPP statute, the Uniform Public Expression Protection Act ("UPEPA"). *See* Ohio Rev. Code § 2747.01 *et seq*. Federal courts often award fees under state anti-SLAPP statutes. *See e.g., Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 184–89 (S.D.N.Y. 2024) (New York); *Paucek v. Shaulis*, 349 F.R.D. 498, 516-19 (D.N.J. 2025) (New Jersey); *Minnix v. Sinclair Television Grp.*, No. 7:23-cv-091, 2023 WL 3570955, at *7-8 (W.D. Va. May 19, 2023) (Virginia).

---

[19] *See* Federal Independent Dispute Resolution Operations Notice of Proposed Rulemaking, *supra* note 9; Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties, *supra* note 14.

Here, the UPEPA's fee-shifting provision applies because Anthem's state claims are based on communications in a judicial, administrative, or other governmental proceeding (*i.e.*, the IDR process), or otherwise, communications on an issue under consideration or review in such a proceeding. Ohio Rev. Code § 2747.01(B)–(C); see *id*. § 2747.04(C)(1)–(2). Since Anthem has failed to state causes of action upon which relief can be granted against HaloMD with respect to its claims arising under state law, *id*. § 2747.04(C)(3)(a), the substantive fee-shifting provision in Ohio's anti-SLAPP statute provides that this Court must award HaloMD its reasonable attorneys' fees, court costs, and reasonable litigation expenses. *Id*. § 2747.05(A).

## XIII. Conclusion.

For these reasons, this Court should dismiss the entirety of Anthem's Amended Complaint with prejudice and issue an award of attorneys' fees. Anthem's dissatisfaction with the IDR process, its discomfort with the IDR process's revelations, and its disdain for HaloMD is neither the basis for a legal claim, nor a legitimate justification to burden this Court

Respectfully submitted,

**NIXON PEABODY LLP**

Dated: November 10, 2025

_____

Jonah D. Retzinger (admitted *pro hac vice*)
Christopher D. Grigg (admitted *pro hac vice*)
Brock J. Seraphin (admitted *pro hac vice*)
April C. Yang (admitted *pro hac vice*)
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071
Tel: (213) 629-6000
jretzinger@nixonpeabody.com

Michael J. Summerhill, Bar No. 69996, Trial Attorney
70 West Madison St., Suite 5200
Chicago, IL 60602.4378
Tel: (312) 977-9224
msummerhill@nixonpeabody.com

*Counsel for Defendant HaloMD, LLC*

46

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2025, a copy of the foregoing *DEFENDANT HALOMD'S MOTION TO DISMISS ANTHEM'S AMENDED COMPLAINT* was electronically filed with the Clerk of the United States District Court for the Southern District of Ohio, Western Division, using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

*/s/ Heidi Gutierrez*
Heidi Gutierrez